STEWART, J.
h The plaintiff, Shatara Harris (“Sha-tara”), filed suit for damages after she was struck by a vehicle driven by the defendant, Latiffany Latriee Dunn (“Latiffany”). Shatara sued Latiffany and her liability insurer, USAgencies Casualty Insurance Company, Inc. (“USAgencies”), as well as State Farm Mutual Automobile Insurance Company (“State Farm”), the provider of uninsured / underinsured motorist (“UM”) coverage for the driver of the vehicle in which Shatara was a passenger. Seeking to deny coverage, both USAgencies and State Farm filed motions for summary judgment on the grounds that Latiffany intentionally struck the vehicle and Sha-tara. The trial court granted both motions. Shatara now appeals the dismissal of her claims as to these two defendants. Because we find that a genuine issue of material fact exists as to whether Latiffa-ny acted intentionally, we reverse the summary judgments and remand for further proceedings.
*370 FACTS
The incident occurred on August 2, 2005, at about 9:30 p.m., in Homer, Louisiana. Latiffany was in her vehicle at the intersection of Pearl and Washington Streets when a vehicle driven by Latonya Harris pulled up beside Latiffany’s vehicle. Sha-tara, who is Latonya’s sister and was a passenger in Latonya’s vehicle, exited and approached Latiffany’s vehicle. The two women exchanged words, and Shatara may have either swung at Latiffany or hit her. As Shatara walked back to Latonya’s vehicle, Latiffany drove her car forward, made a U-turn, and drove back in the same direction. Latiffany’s vehicle hit the front passenger door of Latonya’s vehicle. Sha-tara, who was behind the passenger door while in the process of entering 12the vehicle, was injured. Latiffany did not stop. Rather, she drove to the Claiborne Parish Sheriffs office where she reported the incident.
In the meantime, Sgt. Jimmy Hamilton of the Homer Police Department received a call about the incident and went to the scene to investigate. Afterward, he met Latiffany at the sheriffs station, transported her to the Homer police station, conducted an interview, and then arrested her for the charge of aggravated second degree battery. On March 8, 2006, Latiffany pled guilty to simple battery.
On August 1, 2006, Shatara and Latonya filed suit for damages against Latiffany and her insurer, USAgencies, as well as State Farm, Latonya’s UM insurer.
On September 22, 2008, USAgencies filed a motion for summary judgment on the grounds that its policy excluded coverage for intentional acts and for damage caused while the insured was engaged in the commission of a crime. USAgencies argued that Latiffany intentionally struck Latonya’s vehicle and that Latiffany’s admission of guilt satisfied the policy exclusion.
On November 25, 2008, State Farm filed its own motion for summary judgment. State Farm asserted that because its UM coverage is triggered by an “accident,” Latiffany’s intentional and criminal act did not trigger UM coverage for its insured and her passenger.
Both USAgencies and State Farm relied on the same documentation in support of their motions for summary judgment. This included the depositions of Sgt. Hamilton, Latonya, and Shatara; a certified copy of the |scourt minutes pertaining to Latiffany’s guilty plea to simple battery; and their respective policies. In opposing summary judgment, the plaintiffs offered their own affidavits in which both denied speaking with Hamilton at the accident scene. At the summary judgment hearing, counsel for the plaintiffs sought to introduce a recording of Sgt. Hamilton’s interview with Latiffany the night of the incident. The trial court sustained an objection to the introduction of the recorded statement on the basis that it was not permissible evidence for consideration on summary judgment.
After hearing arguments, the trial court granted both motions for summary judgment. As to USAgencies’ motion, the trial court concluded that Latiffany’s guilty plea satisfied the specific exclusion for the commission of a crime under the policy. As to State Farm’s motion, the trial court was persuaded that “accident” as used in the policy refers to some unintentional event. Judgments dismissing the claims of Latonya and Shatara against USAgencies and State Farm were signed on February 19, 2009.
Only Shatara has appealed. She asserts that the trial court erred in refusing to allow the introduction of Latiffany’s recorded statement and in granting the sum *371 mary judgments on the grounds that Latif-fany’s actions were intentional and thus excluded from coverage.
DISCUSSION

Latijfany’s Recorded Statement

Shatara argues that the trial court erred in refusing to consider the recorded statement of Sgt. Hamilton questioning Latiffa-ny. She contends |4that the statement was obtained through discovery, was on file in the record, and thus properly before the court for consideration even though not attached to any affidavit.
To preserve an evidentiary issue for appellate review, it is essential that the complaining party enter a contemporaneous objection to the ruling and state the reasons for the objection. Robinson v. Healthworks Intern., L.L.C., 36,802 (La.App.2d Cir.1/29/03), 837 So.2d 714, writ not considered, 2003-0965 (La.5/16/03), 843 So.2d 1120; Currie v. Myers, 32,633 (La.App.2d Cir.1/26/00), 750 So.2d 388, writ not considered, 2000-0665 (La.3/17/00), 756 So.2d 316. The record does not show that plaintiffs counsel objected to the trial court’s ruling so as to preserve the issue for appellate review.
Moreover, the recorded statement was not competent summary judgment evidence. Summary judgment evidence includes the pleadings, depositions, answers to interrogatories, and affidavits. La. C.C.P. art. 966(B). Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached to the affidavit or served with it. La. C.C.P. art. 967(A). Unsworn or unverified documents are not self-proving and will not be considered on summary judgment. Marino v. Parish of St. Charles, 09-197 (La.App. 5th Cir.10/27/09), 27 So.3d 926. A document that is not an affidavit, or is not certified and not attached to an affidavit, is not of sufficient evidentiary quality to be given weight in determining whether there remains a genuine issue of material fact. Boland v. West Feliciana Parish Police Jury, 2003-1297 (La.App. 1st Cir.6/25/04), 878 So.2d 808, writ denied, 2004-2286 (La.11/24/04), 888 So.2d 231.
The recorded statement offered by plaintiffs counsel at the summary judgment hearing met none of the requirements for consideration as competent summary judgment evidence. Therefore, the trial court did not err in refusing to consider the recorded statement.

Review of Summary Judgments

A summary judgment is subject to a de novo review on appeal under the same criteria that govern the trial court’s consideration of whether summary judgment is appropriate. Canterberry v. Chamblee, 41,940 (La.App.2d Cir.2/28/07), 953 So.2d 900. Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B).
A summary judgment declaring a lack of coverage under an insurance policy is not appropriate unless there is no reasonable interpretation of the policy, when applied to the undisputed material facts, under which coverage could be provided. Canterberry, supra, citing Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180. Insurers are free to limit coverage in any manner that does not conflict with statutory provisions or public policy. Id. However, exclusionary provisions are to be strictly construed against the insurer with any ambiguity construed in favor of the insured. Canterberry, supra; Herzog Contracting Corp. v. Oliver, *372 | fi 40,342 (La.App.2d Cir.12/16/05), 918 So.2d 516, writ denied, 2006-0154 (La.4/24/06), 926 So.2d 542. The insurer has the burden of proving the applicability of a coverage exclusion within a policy. Blackburn v. National Union Fire Ins. Co. of Pittsburgh, 2000-2668 (La.4/3/01), 784 So.2d 637.
Liability coverage for Latiffany is set forth in Part A of the USAgencies policy. To deny coverage, USAgencies relies on the “Exclusions for Part A,” which states in relevant part:
Coverage for Your Liability to Others does not apply to any of the following: 2. Bodily injury or property damage caused by an intentional act by or at the direction of any covered person or a named excluded operator.
• • •
12. Bodily injury or property damage caused by any covered person while engaged in the commission of a crime.
USAgencies argues that Latiffany committed a crime as established by her guilty plea and that she intentionally struck Latonya’s vehicle and injured Shatara.
We will first address the exclusion for injury or damage caused by a covered person while engaged in the commission of a crime. The USAgencies policy defines the word “crime” as meaning “any felony or any action to flee from, evade or avoid arrest or detection by the police or other law enforcement agency.” Latiffany was not fleeing, evading, or avoiding arrest when the incident occurred. Thus, this portion of the definition is not applicable. USAgencies relies on the court minutes documenting Latiffany’s guilty plea to simple battery as evidence that she committed a |7crime to satisfy the policy exclusion. However, simple battery is a misdemeanor offense and does not fit the definition of a crime under USAgencies policy. Because the guilty plea does not show that Latiffa-ny was engaged in a “crime” as defined by USAgencies’ policy, USAgencies is not entitled to summary judgment on the basis of its crime exclusion.
USAgencies also relies on an intentional acts exclusion. State Farm likewise relies on the alleged intentional nature of Latiffany’s actions in arguing that its UM coverage does not apply. The State Farm policy’s UM coverage provision states:
We will pay nonpunitive damages for bodily injury an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle. The bodily injury must be sustained by an insured and caused by an accident arising out of the operation, maintenance or use of an uninsured motor vehicle.
State Farm argues that Shatara’s alleged injuries resulted from an intentional criminal act, not an accident. As such, its UM coverage does not apply to Shatara, a passenger in its insured’s vehicle.
The issue is whether Latiffany intended to hit either Latonya’s vehicle or Shatara. Both USAgencies and State Farm refer to Latiffany’s guilty plea as proof of her intent. A guilty plea is an admission against interest that is relevant to proving fault in a civil case. Shephard on Behalf of Shephard v. Scheeler, 96-1690 (La.10/21/97), 701 So.2d 1308; Hooper v. State Farm Mut. Auto. Ins. Co., 00-1509 (La.App. 5th Cir.1/23/01), 782 So.2d 1029. While a guilty plea is admissible, it is not conclusive evidence. American Medical Enterprises, Inc. v. Audubon Ins. Co., 2005-2006 (La.App. 1st Cir.6/8/07), 964 So.2d 1022, writ denied, 2007-1405 (La.10/26/07), 966 So.2d 575; Miles v. Louisiana Landscape Specialty, Inc., 97-118 (La.App. 5th Cir.6/30/97), 697 So.2d 348. Thus, while Latiffany’s guilty plea may be considered as evidence in deter *373 mining her intent, it alone is not proof that she acted intentionally.
All the surrounding circumstances must be examined to determine a person’s intent at the time the alleged intentional act occurred. Poulan v. Hunter, 86,225 (La.App.2d Cir.11/6/02), 880 So.2d 1125. An intentional act is one where the actor either (1) consciously desires the physical result of his act, whatever the likelihood of that result happening, or (2) knows that the result is substantially certain to follow from his conduct, whatever his desire may be as to that result. Norwood v. VariVeckhoven, 34,891 (La.App.2d Cir.6/22/01), 792 So.2d 836, citing Pique v. Saia, 450 So.2d 654 (La.1984).
Summary judgment based on the determination of subjective factors such as intent, motive, good faith, knowledge, or malice is seldom appropriate as such determinations require credibility evaluations and the weighing of evidence. White v. Golden, 43,076 (La.App.2d Cir.4/30/08), 982 So.2d 234, citing Louisiana AG Credit, PCA v. Livestock Producers, Inc., 42,072 (La.App.2d Cir.4/4/07), 954 So.2d 883, writ denied, 2007-1146 (La.9/14/07), 963 So.2d 1001. Moreover, the circumstantial evidence that is usually necessary to prove intent requires the trier of fact to choose from competing inferences, a task that is not appropriate in a summary judgment proceeding. Id. Summary judgment is appropriate only |flif there is no factual dispute as to intent. Norwood, supra. That is not the case here.
In his deposition, Sgt. Hamilton testified that he was the only officer to investigate the accident and prepare the 10-page accident report. Neither the report nor his interview with Latiffany was attached to his deposition or otherwise offered as evidence in a form appropriate for summary judgment. Based on the police investigation, Hamilton testified that Latonya was driving behind Latiffany and honking the horn at her. When Latiffany stopped at an intersection, Latonya pulled her vehicle in the middle of the street beside Latiffa-ny’s vehicle. Shatara exited to ask Latif-fany why she, allegedly, tried to run over her earlier the same day. A verbal altercation ensued during which Shatara swung at Latiffany and may have hit her. Latif-fany drove forward, made a U-turn, and then sideswiped Latonya’s car, possibly dragging Shatara, who was between the open car door and the interior of the vehicle. When Sgt. Hamilton arrived at the scene, he observed moderate “sideswipe” damage to the passenger side of Latonya’s vehicle. He recalled that Shatara was standing but appeared to be dirty and claimed to be injured. When questioned about his interview with Latiffany, Hamilton testified that she told him that she knew she had hit the car but did not know that she had hit Shatara. When asked if Latiffany admitted that she intended to hit the vehicle, Hamilton stated:
I would have to go back and listen to it again but I’m almost sure that she told me just what was in my report. That she did a U-turn and drove back towards Ms. Harris’s vehicle. That’s what she said. She drove back towards her vehicle. She said she was angry due, you know, to the young lady hitting her and she drove back towards their vehicle and struck it.
| mHamilton also explained that after Latif-fany hit the car she was afraid that if she stopped then the young women in Latonya’s vehicle would “jump on her.” So, she went straight to the sheriffs office. When asked whether either Shatara or Latonya said that Latiffany intentionally tried to hit them, Hamilton stated that he believed that they did but could not say for certain without looking at the witness statements *374 in the criminal case file, which he did not have.
In her deposition, Shatara generally described the same events as related by Hamilton. However, she claimed that she was only talking to Latiffany, and she denied taking a swing at her or hitting her. Shatara stated that as she was getting back into Latonya’s vehicle, Latiffany “went and turned around and came back and I don’t know if she was trying to hit the vehicle or try [sic] to hit me. I don’t know.” She said that Latiffany hit the open door.
Latonya’s testimony was substantially the same as Shatara’s. Additionally, she stated that Latiffany had pulled away at a normal speed prior to making the U-turn and coming back in the same direction. When asked if it appeared that Latiffany hit her car on purpose, Shartara stated, “I don’t know if she did it on purpose or not. I don’t know.”
In their affidavits, both Latonya and Shatara denied speaking to Hamilton at the accident scene and claimed to have spoken with an officer named Donald Mallory. They denied that Shatara argued with Latiffany or swung at her. They stated that Latiffany turned her car around and came |nback and that the impact occurred when Shatara was inside the car with one leg out.
It is undisputed that the women stopped at the intersection, that Shatara exited Latonya’s vehicle and had some sort of discussion with Latiffany, that Latiffany pulled forward to turn her vehicle around, and that she then hit the passenger door of Latonya’s vehicle while Shatara was in the process of entering it. Latiffany then drove to the sheriffs office where she remained until Hamilton came for her. Neither Shatara nor Latonya said definitively that Latiffany intended to hit either the vehicle or Shatara. In their affidavits, both women denied speaking with Hamilton at the accident scene. Though Latiffa-ny pled guilty to simple battery, her plea alone does not suffice on summary judgment to establish her intent. Finding an intentional act would require us to make credibility determinations and weigh the conflicting evidence concerning whether Sgt. Hamilton, whose deposition suggests that Latiffany acted intentionally but whose recall on that very issue appears questionable, interviewed Shatara and Latonya as he claimed or whether they spoke to another officer as they asserted in their affidavits. Though Hamilton believed that Latiffany acted intentionally, he could not say for certain without looking back at the witness statements, which he did not have, or listening to his digitally recorded interview with Latiffany, which was not offered as evidence in a proper form. At most, Hamilton’s deposition shows that Latiffany admitted striking Latonya’s vehicle, which is undisputed, but not that she admitted doing so intentionally.
112While it certainly appears that Latiffa-ny may have acted recklessly and carelessly, we cannot say as a matter of fact that the record shows she intended to hit either Latonya’s vehicle or Shatara with her vehicle. To affirm the summary judgments, we would have to accept the inferences drawn by USAgencies and State Farm from the circumstances surrounding the incident. Other inferences are plausible. For example, Latiffany may have simply acted recklessly by driving too closely to Latonya’s car (which the record suggests was in the middle of the road) after making the U-turn, and then hitting the open door by accident as Shatara was entering the vehicle. Even though Latiffany pled guilty to simple battery, we find that the record shows that a genuine issue of material fact exists as to whether Latiffany’s actions constituted an intentional act. As *375 such, summary judgment in favor of USA-gencies is not warranted.
This issue of fact also means that summary judgment in favor of State Farm is also not warranted. We make no ruling on State Farm’s argument that its UM coverage is not triggered when an intentional act, rather than an “accident,” causes damage or injury to persons entitled to UM coverage under its policy.
CONCLUSION
For the reasons explained, the trial court’s judgments in favor of USAgencies and State Farm dismissing the claims of the plaintiff, Shatara Harris, are reversed and vacated. Costs are to be divided equally between USAgencies and State Farm. This matter is remanded for further proceedings.
REVERSED, VACATED, and REMANDED.