CARAWAY, J.
|2The facts of this motor vehicle accident were disputed at the trial court. Finding that the trial court failed to consider important physical evidence, we reverse and assess 100% fault to the plaintiff-driver.

Facts

On January 17, 2008, Sharnetta Hopkins (“Hopkins”) and Lisa George (“George”) filed a joint petition for damages naming as defendants Brian C. Nola (“Nola”) and his liability insurer, Louisiana Farm Bureau Casualty Insurance Company (“Louisiana Farm”). In their petition, plaintiffs asserted that on the evening of December 21, 2007, Hopkins was driving her Pontiac Grand Am southbound on Cole Avenue in Monroe with George as a passenger, when Nola attempted to pass them. The petition then alleged that upon his reentry into plaintiffs’ lane of travel, the passenger side of Nola’s vehicle forcibly struck the front driver’s side of Hopkins’ vehicle. The petition further provides that Nola, who was driving a Chevrolet Silverado truck, was traveling at night with his headlights off. Plaintiffs prayed for damages arising from physical injuries as well as damages sustained to Hopkins’ automobile.
Defendants answered, denying plaintiffs’ allegations and claiming the accident was wholly attributable to the fault of plaintiff, Hopkins, for failing to stop at a stop sign applicable to the traffic on Desoto Street at the intersection with Cole Avenue. In further answering, defendants alleged, in the alternative, the comparative fault of Hopkins.
George subsequently withdrew her position as a co-plaintiff with Hopkins and retained separate counsel to represent her for her injuries in this accident. On December 18, 2008, George individually filed a “first amending petition,” to name Hopkins and her insurer, U.S. Agencies Insurance Company (“U.SAgencies”), as additional defendants. The amended petition alleged negligence on the part of Hopkins for: (1) failing to keep a proper lookout; (2) failing to follow standard traffic laws; and (3) driving in a reckless and unsafe manner with complete disregard for the safety and well-being of others. Nevertheless, on July 23, 2009, George dismissed Hopkins pursuant to a joint motion and order of voluntary partial dismissal.
|SA bench trial was commenced in March 2010. The trial court was presented with two versions of the accident. Plaintiffs testified that the collision took place as they were attempting to make a right turn into the parking lot of a Popeye’s Chicken located on Cole Avenue. Cole Avenue, which runs in a north/south direction, is parallel to Highway 165. These two thoroughfares are connected by Desoto Street, which runs east and west. Desoto Street is controlled by a stop sign at its intersection with Cole, giving drivers on Cole Avenue the right of way. There is a bank that sits directly south of the intersection on Cole Avenue. To the south of the bank from Cole Avenue, the Popeye’s Chicken sits adjacent to and connects with the rear of the bank’s parking lot at the other end of the block. According to plaintiffs, they had exited Highway 165 onto Desoto Street, turned right onto Cole Avenue, passed the bank and were attempting to make a right turn into the Popeye’s parking lot when the accident occurred. Plaintiffs contend that Nola sped through the intersection, attempted to pass Hopkins’ vehicle in the oncoming traffic lane of Cole and then re-entered their lane of travel too soon, causing the collision. Plaintiffs suggested that the force of the impact caused *1077 their vehicle to spin around two complete times. They contended that the vehicle traveled north from the actual site of impact, back toward the bank and the intersection of Cole and Desoto.
To the contrary, Nola testified that the accident occurred right at the intersection of Cole and Desoto. According to Nola, he was traveling south on Cole when Hopkins ran the stop sign at Desoto and turned right into his lane of traffic.
Following the presentation of evidence, the trial court returned a judgment in favor of the plaintiffs. The judgment assigned Nola 80 percent fault and assessed Hopkins with the remaining 20 percent. Hopkins was awarded $8,336.41 in stipulated special damages and $4,500 in general damages, and George was awarded $1,014.14 in stipulated special damages and $2,500 in general damages. All awards were subject to the trial court’s apportionment of fault.
In its reasons for judgment, the trial court gave the following observation regarding the testimony of the investigating police officer who ticketed Hopkins for running the stop sign:
L4... the court determines that the point of impact was south of the intersection and not in the intersection and does not find that Hopkins ran the stop sign. The investigating officer did not take any photographs, diagram the location of any debris from the accident and did not talk to all of the witnesses and therefore, did not aid the court in reaching a decision. Although Hopkins received and later paid the traffic citation out of the court, the payment per se is not dispositive of the issue of fault of liability.
From this judgment, defendants appeal.

Discussion

In civil cases, the appropriate standard for appellate review of factual determinations is the manifest error-clearly wrong standard, which precludes the setting aside of a district court’s finding of fact unless that finding is clearly wrong in light of the record reviewed in its entirety. Cenac v. Public Access Water Rights Ass’n, 02-2660 (La.6/27/03), 851 So.2d 1006. To reverse a factfinder’s determination under this standard of review, an appellate court must undertake a two-part inquiry: (1) the court must find from the record that a reasonable factual basis does not exist for the finding of the trier of fact; and (2) the court must further determine the record establishes the finding is clearly wrong. Stobart v. State Dept. of Transp. and Dev., 617 So.2d 880 (La.1993). Ultimately, the issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one. Id. If the factual findings are reasonable in light of the record reviewed in its entirety, a reviewing court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Id.
Where two reasonable views of the evidence exist, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. Stroik v. Ponseti, 96-2897 (La.9/9/97), 699 So.2d 1072 (emphasis in original). However, where documents or objective evidence so contradict a witness’s story, or the story itself is so inherently inconsistent or implausible on its face that a reasonable factfinder would not credit the witness’s story, a reviewing court may well find manifest error. Rosell v. ESCO, 549 So.2d 840 (La.1989); Brewer v. J.B. Hunt Transport, Inc., 09-1408 (La.3/16/10), 35 So.3d 230. Although deference to the factfinder should be accord *1078 ed, |r,because appellate courts have a constitutional duty to review both law and facts, they have the right and obligation to determine whether a trial court verdict is clearly wrong based on evidence, or clearly without evidentiary support. Id.; Ambrose v. New Orleans Police Dep’t Ambulance Service, 93-3099 (La.7/5/94), 639 So.2d 216. Therefore, it is not the case that a trial court’s factual determinations “cannot ever, or hardly ever, be upset.” Id.
At trial, Hopkins testified that as she used her signal in turning into Popeye’s she “heard a loud roar.” She suddenly saw a truck and then felt the truck make contact with her vehicle. According to Hopkins, the force of the collision caused her vehicle to spin to the right two complete times and as it spun, it traveled north back toward the intersection. Consequently, Hopkins asserted that post-impact her vehicle came to rest in the middle of the bank’s parking lot. From photos showing the entire block along Cole between the bank and Popeye’s, the bank’s parking extended well behind the bank building with numerous parking spaces for turning in directly off of Cole and parking perpendicular to the street.
Hopkins additionally testified that the investigating officer, Officer Shawn Maynard,[1] failed to listen to her version of what happened and as a result issued her a citation for running the Desoto Street stop sign. Although she admitted to receiving and paying a ticket for running the stop sign, she stated that she did so to avoid going to court and that her intent was not to admit guilt of the action alleged.[2] Hopkins testified that her injuries consisted of pain to her knee, neck and back. Hopkins originally presented her injuries to the North Monroe Emergency Room where she received pain medication. She later sought treatment from Dr. J.D. Patterson, a primary care physician.
The plaintiffs also offered the testimony of Terry Butler, Hopkins’ husband, in order to corroborate Hopkins’ complaint against Officer Maynard. Butler testified that he arrived at the scene within five minutes of |fithe wreck and that Officer Maynard was already on location. He attempted to speak to the officer, but was told that he was interfering with the investigation and that he should step back or be arrested. Butler additionally testified that upon his arrival, the vehicles had not been moved. Butler was shown pictures of the intersection and asked where the vehicles ultimately came to a resting position. He testified that Hopkins’ vehicle was displaced to the center of the bank’s parking lot. He then identified Nola’s position as being within close proximity to the Popeye’s parking lot, although still within the boundaries of the bank’s parking lot.
George testified consistently with Hopkins’ recitation of how the accident took place. George placed the final resting position of Hopkins’ vehicle “like in the middle of the bank.” George also testified that the officer was telling them how the accident happened instead of asking questions. She stated that she was never *1079 asked for a statement and was not directed to fill out a witness statement form. George additionally testified that she saw Nola’s father arrive at the scene and kick debris in the street toward the intersection. As a result of the collision, George suffered from pain in both her chest and back. On the evening of the accident, she sought treatment from the North Monroe Emergency Room and later from Dr. Patterson.
In defense, Nola testified that Hopkins ran a stop sign and entered his lane of travel as he headed southbound on Cole Avenue. He averred that leading up to the accident, he was driving at a rate of 25 mph with his headlights illuminated. He was on his way to a party that was located on Cole Avenue, when he “saw her headlights out of [his] peripheral” and “by the time [he] noticed that she wasn’t stopping at that stop sign and that she was even there, there was nothing [he] could do.” Nola stated that his dad brought his proof of insurance to the scene, but that he never saw him kick debris. Nola’s testimony revealed that $3,200 of damage was done to his truck and that Hopkins’ insurer, U.S. Agencies, paid to have this damage repaired.
Officer Maynard reported in his testimony that he was familiar with the intersection of Cole and Desoto and that he had an independent recollection of this particular accident. He testified without reference to a |7police report. Nevertheless, he acknowledged his filing contemporaneously of a written report of the accident.
Officer Maynard arrived at the scene within three to four minutes and spoke with both drivers. Neither of the vehicles had been moved, and he observed that Hopkins’ vehicle came to rest on the cusp of the intersection and the bank’s parking lot. Officer Maynard identified the spot on a photograph of the intersection from Cole facing the bank. He drew an “x” on the photo just south of the intersection. At that point, the stop sign is seen in an area of grass, and the location of Hopkins’ vehicle as identified by the officer is only a few feet beyond the stop sign before the first parking space. That first bank parking space extends perpendicular to Cole and lies beyond the bank building toward Desoto.
When Officer Maynard was shown what plaintiffs identified as the final resting place of the vehicles (which was farther south from the intersection), he responded that this positioning was physically impossible considering where the debris from the accident was found. The majority of the debris, which was made up of broken headlight fixtures, was located south of the intersection, within 2 to 4 feet and strewn no further than a 10 to 12 foot radius. Additionally, he testified that during his investigation, Hopkins gave him two different accounts of the collision, making her a less credible "witness. Officer Maynard noted that at no point did he observe Nola’s father kicking debris toward the intersection. He asserted that Nola had the right of way on Cole Avenue, and it was the duty of Hopkins to stop at the stop sign and yield to oncoming traffic. Officer Maynard issued a citation to Hopkins for running the stop sign.
Upon cross examination, Officer Maynard admitted that he failed to document the location of the debris, did not take a written statement from George, and further failed to take any photographs of the accident scene. However, Officer Maynard ultimately concluded, based on his independent recollection, that the location of the debris was consistent with the final resting places of the vehicles. Furthermore, he described plaintiffs version of the wreck as “very unbelievable” since “her vehicle was nowhere close to turning *1080 nowhere into Popeye’s.” According to Officer Maynard, if her car had spun, the back tires would have gone through the debris, causing a ^visible trail. Such a delineation in the debris was not evidenced at the scene; the debris was simply scattered on the ground.
Finally, Officer Maynard testified that had Hopkins already made a turn onto Cole Avenue as she claimed, Nola would have rear-ended her, causing “more of a rear end swipe,” which would have inevitably caused more damage to the vehicles. Photographs of both vehicles, depicting the damage caused by the accident, were placed into evidence. The photos of defendant’s truck damage reveal that a large indentation was sustained directly at the extended cab section of the truck, located on the passenger side. There is a very slight scrape that extends from that indentation to the rear passenger side tire well. On the other hand, photos of Hopkins’ vehicle reveal that the front left headlight area was completely smashed and dislocated. Considerable damage was also incurred to the hood on the front driver’s side. Officer Maynard testified that this damage to the vehicle did not match Hopkins’ version of the accident, stating “if she had made it on Cole, he actually [would have] had to turn in front of her, you know, for it to be the damage on his vehicle.”
The defense submitted into evidence the deposition of Michael Wren, who was crossing Cole Avenue on foot a couple of blocks away, when he heard the collision take place. Wren, who did not actually see the accident unfold, testified that the vehicles came to a resting position within a car length of the Cole Avenue/ Desoto Street intersection. Wren disclosed that he did not approach the accident scene because he did not think it was of a serious nature and the police were quick to respond. It was not until later in the evening that he discovered Nola’s vehicle was involved in the accident. According to Wren, Nola later arrived at the party he was attending and appeared to be agitated and angry. Nola told Wren that he was not at fault for the accident and asked Wren if he would be a witness in the event a legal dispute later arose. At trial, however, Nola testified that he never asked Wren to stand as a witness on his behalf.
From our review of the evidence, we find that the trial court committed reversible error in its wholesale dismissal of Officer Maynard’s testimony due to deficiencies in his investigation of the accident. Officer Maynard identified the fact of his written accident report, yet testified from |9his memory and with reference to photos of the accident scene presented to him at trial. The plaintiffs did not attempt to offer the written report or cross-examine the officer directly on its contents to show that his memory of the accident at trial differed from the report. Therefore, the trial court’s articulation in its written ruling of perceived deficiencies is unfounded. The trial court’s ruling on its exclusion of the officer’s testimony furthermore was not expressed as a credibility assessment of Officer Maynard based upon a finding of untruthfulness or bias. Of all the witnesses, this officer, who was called by happenstance to the accident scene, had no connection with either side and was therefore the only impartial and unbiased witness who testified on the critical fact of the location of the collision.
This error by the trial court and our review of all of the evidence demonstrate to us that Hopkins’ denial of her violation of the stop sign and both plaintiffs’ account of the accident site near the Popeye’s entrance are contradicted entirely by the objective evidence. Officer Maynard placed the scene of the accident unques *1081 tionably at the intersection, and he acted contemporaneously in issuing the traffic citation to Hopkins. The evidence of the damage to the vehicles does not support Hopkins’ account that Nola passed her on the two-lane street and cut her off while re-entering their lane of travel.
Officer Maynard’s opinion testimony of the nature of the collision as reflected by the impact to the center of Nola’s truck was that Hopkins’ vehicle rammed the side of the truck while entering the intersection from Desoto. The photos of the actual damage to the vehicles are indisputable objective evidence that support that assessment and make Hopkins’ account implausible. Accordingly, we find that the objective evidence so contradicts the plaintiffs’ story that a reasonable factfinder would not credit that story. The ruling of the trial court was therefore clearly wrong and manifestly erroneous.
Accordingly, we find no fault on Nola as he traveled with the right of way on Cole Avenue. We reverse the judgment of the trial court dismissing plaintiffs’ claims. Costs of appeal are assessed to appellees.
REVERSED.

. Office Maynard is now Trooper Shawn Maynard and is currently employed with the Louisiana State Police. At the time of the accident he was employed with the Monroe City Police Department.

. We note that a guilty plea is an admission against interest that is relevant to proving fault in a civil case. Shephard on Behalf of Shepard v. Scheeler, 96-1690 (La. 10/21/97), 701 So.2d 1308; Harris v. Dunn, 45,619 (La.App.2d Cir.9/22/10), 48 So.3d 367. However, while a guilty plea is admissible, it is not conclusive evidence. American Medical Enterprises, Inc. v. Audubon Ins. Co., 05-2006 (La.App. 1st Cir.6/8/07), 964 So.2d 1022, writ denied, 07-1405 (La. 10/26/07), 966 So.2d 575.