BROWN, Chief Judge.
hOn August 1, 2006, plaintiff, Shatara Harris (“Shatara”), filed suit for damages after she was struck by a vehicle driven by defendant, Latiffany Latrice Dunn (“Latif-fany”). Also named as defendants were Latiffany’s liability insurer, USAgencies Casualty Insurance Company, Inc. (“USA-gencies”), as well as State Farm Mutual Automobile Insurance Company (“State Farm”), the provider of uninsured/underin-sured motorist (“UM”) coverage for the driver of the vehicle in which Shatara was a passenger. Service was unsuccessfully attempted on Latiffany multiple times. Initially, both USAgencies and State Farm filed motions for summary judgment on the grounds that Latiffany used her vehicle to intentionally strike Shatara. The trial court granted both motions; however, finding that a genuine issue of material fact existed as to whether Latiffany acted intentionally, we reversed the summary judgments and remanded for further proceedings. Harris v. Dunn, 45,619 (La.App.2d Cir.09/22/10), 48 So.3d 367.[1]
Plaintiff, Shatara Harris, now appeals from an adverse judgment denying all of her claims for damages against defendants, USAgencies and State Farm. Although disagreeing in part with the reasons of the trial court, we affirm.
| ⅞Facts and Procedural History
A bench trial was held on May 23, 2011. Latonya Robinson, the driver of the vehicle in which Shatara was a passenger, and Shatara were the only witnesses called to testify. The deposition of Sgt. Jimmy Hamilton of the Homer Police Department and Latiffany’s recorded statement taken by Sgt. Hamilton on the night of the collision, along with Shatara’s medical records, were admitted into evidence.
The automobile collision at issue occurred on August 2, 2005, in Homer, Louisiana. At approximately 9:30 P.M., Latonya Robinson was driving her vehicle down Pearl Street with five other family members riding along, including her sister, plaintiff, Shatara Harris. Plaintiffs cousin, Latiffany Dunn, was in her vehicle at the intersection of Washington and Pearl Streets when Latonya sounded her horn and pulled her vehicle up to the right side *131 of Latiffany’s car. Shatara, riding in the passenger side front seat, exited the car and walked around the cars to Latiffany’s window.
In statements to the police, Latiffany alleged that Shatara reached inside of the car and struck her twice in the face. La-tiffany stated that Shatara and her family had been harassing her prior to this incident. According to Latiffany, the reason for Shatara’s and Latonya’s animosity was because she was engaged to marry the father of Latonya’s child. In their statements to police, Latonya and Shatara said that there was a confrontation and that Shatara attempted to hit Latiffany. At trial, however, Latonya and Shatara testified that they were unsure as to whether Shatara | .«¡ever attempted to strike Latiffa-ny. At trial Shatara also claimed that Latiffany had tried to hit her with a car earlier that day.
Following the confrontation at Latiffa-ny’s vehicle, Shatara was walking back to Latonya’s car when Latiffany pulled forward, performed a quick U-turn and drove back to Latonya’s car. Latiffany told the police that she was turning around so she could hit Shatara with a stick that she kept in her car; however, Latiffany’s vehicle struck the passenger side door of Latonya’s car as it was opened by Shatara. Plaintiff was hit by the door and became caught on the bumper of Latiffany’s vehicle. She was dragged several feet before becoming free and was later treated for a broken wrist. Latiffany was arrested on the charge of second degree battery, eventually pleading guilty to a charge of simple battery. Shatara was also cited for simple battery.
On October 25, 2011, the trial court rendered judgment in favor of defendants and issued written reasons for judgment. The trial court found that Shatara failed to put into evidence the insurance policies and therefore, failed to meet her burden of proving insurance coverage. The court also found that Latiffany intentionally struck Shatara. Thereafter, Shatara filed this timely appeal.

Discussion

Plaintiff raises two assignments of error on appeal. First, Shatara asserts that the trial court erred in finding that Latiffany’s actions were intentional and that plaintiff failed to meet her burden of proof to establish insurance coverage for the collision.

\4Intentional Act

A court of appeal may not overturn a judgment of a trial court absent an error of law or a factual finding that was manifestly erroneous or clearly wrong. Stobart v. State, Dept. of Transp. and Dev., 617 So.2d 880 (La.1993).
If the findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse, even though convinced that, had it been sitting as the trier of fact, it would have weighed the evidence differently. Id. Where two permissible views of the evidence exist, the fact finder’s choice between them cannot be manifestly erroneous. Id.; Easter v. Direct Ins. Co., 42,178 (La.App.2d Cir.05/09/07), 957 So.2d 328. Further, when findings are based upon determinations regarding credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact’s findings. Id.
The evidence supports the finding that Shatara was the initial aggressor in the confrontation. Shatara got out of the vehicle in which she was riding and walked over to Latiffany and at least attempted to strike her. Latiffany made an aggressive U-turn with the admitted intent of striking Shatara. Latiffany then struck the passenger side door of the car into which plaintiff was getting. The trial court cor- *132 reetly found that Latiffany, who pled guilty to simple battery, acted intentionally to injure Shatara.

Insurance Coverage

It is not disputed that plaintiff failed to introduce both State Farm’s and US Agency’s policies into evidence at trial.
| BThis court has 'addressed the issue of proving insurance coverage when a plaintiff fails to introduce the insurance policy into the record. In the context of confirming a preliminary default judgment, this court has held that the policy itself is essential to establishing a prima facie case against an insurer. Sudds v. Protective Cas. Ins. Co., 554 So.2d 149 (La.App. 2d Cir.1989); Brown v. Trinity Ins. Co., 480 So.2d 919 (La.App. 2d Cir.1985). Addressing the importance of introducing an insurance contract into evidence, this court opined:
It is almost unnecessary to state that the reason for the rule is that the true intent of the parties may be best determined by reading the written document. Failure to do so can result in the sort of inaccuracies that are alleged in the instant case. [... ] The proper remedy is not a judgment based on insufficient proof; rather the plaintiff should pursue discovery procedures in the trial court for securing the production of the document or the admission of its contents.
Sudds, 554 So.2d at 151.
In her original petition, plaintiff alleged that State Farm issued an insurance policy for Latonya Robinson’s vehicle which provided UM coverage and USAgencies issued a policy to Latiffany Dunn which provided coverage for the collision. State Farm responded by admitting that a policy was issued to Latonya, but that the policy itself was “the best evidence of that which is contained therein.” USAgencies denied the allegation and stated that “[i]n further response, USAgencies shows that its policy does not provide coverage for the allegations made [in ... ] this Petition pursuant to the intentional act exclusion contained with the policy. USAgencies further pleads any and all other applicable exclusions contained with the policy of insurance.”
IfiAs stated above, this is the second time this case has come before this court. In the first appeal, this court explained:
... Seeking to deny coverage, both US-Agencies and State Farm filed motions for summary judgment on the grounds that Latiffany intentionally struck the vehicle and Shatara. The trial court granted both motions. Shatara now appeals the dismissal of her claims as to these two defendants. Because we find that a genuine issue of material fact exists as to whether Latiffany acted intentionally, we reverse the summary judgments and remand for further proceedings.
Harris, 48 So.3d at 369.
In the first Harris case this court recognized the insurance policies of both insurers, as had the trial court, and, in fact, quoted extensively from certain provisions from those policies. This court found that there were material issues of fact as to the intentional act exclusion and remanded for trial. As to the uninsured motorist provision, this court wrote:
This issue of fact also means that summary judgment in favor of State Farm is also not warranted. We make no ruling on State Farm’s argument that its UM coverage is not triggered when an intentional act, rather than an “accident,” causes damage or injury to persons entitled to UM coverage under its policy.
Harris, 48 So.3d at 375.
The insurance policies are in the record. They were attached to the affidavits filed by defendants in their summary judgment *133 motions. These policies were referred to by the trial court in its consideration of the summary judgment motions, as well as in this court on appeal.
Under these particular circumstances, we find this case to be distinguishable from the cited cases. Therefore, we find that the trial court’s ruling on this issue is erroneous. Defendants’ pleadings, stipulations,^J^and the record of the summary judgment motions and appeal serve to prove the existence and contents of the policies.
Having found that Latiffany’s actions were intentional and that the USAgencies policy had an intentional act exclusion, we affirm the trial court’s judgment in favor of USAgencies. This also applies to the cross-claim of State Farm against USA-gencies. It was stipulated that State Farm’s cross-claim against USAgencies included payment by State Farm of both property damage claims in the amount of $4,672.82 and medical bills in the amount of $4,458.90.

Uninsured motorist coverage by State Farm

In this case, the requirement that an “accident” must occur is applicable for the recovery of uninsured motorist benefits. State Farm argues that intentionally inflicted injuries are not “caused by accident” and thus, are beyond the scope of protection afforded by its uninsured motorist clause.
In Blue v. State Farm Mut. Auto. Ins. Co., 493 So.2d 701, 703 (La.App. 2d Cir.1986), writ denied, 496 So.2d 1041 (La.1986), a case involving an assault with a ball point pen after a minor accident, the court stated:
[Ajdmittedly, this court and the First Circuit have expressly stated that the phrase “caused by accident” in an uninsured motorist provision should be interpreted from the victim’s standpoint. Thus, acts intentionally committed -with a vehicle by an uninsured motorist would be included under the coverage ... Nevertheless, this issue is not really crucial to a correct disposition of the instant case. Regardless of how the incident that causes the injuries is interpreted, it still must be shown to have arisen out of the operation, maintenance or use of an uninsured motor vehicle.
| sIn Redden v. Doe, 357 So.2d 632 (La.App. 1st Cir.1978), the plaintiff’s car was intentionally forced off the road by two vehicles occupied by men who sought to steal bank deposits which plaintiff supposedly had in her vehicle. Plaintiffs car capsized and came to rest in a bayou, at which time one of the assailants grabbed her by the shoulder and pulled her from the car. Plaintiff suffered injuries as she was pulled through a broken window in the car. She thereafter sued her auto insurer, claiming coverage under the UM provisions of her policy which, in essence, obligated the insurer to compensate the insured for injuries “caused by accident.” The court of appeal affirmed the trial court’s judgment, finding that, from the standpoint of the insured, the incident in question was an accident even though her injuries resulted, at least indirectly, from the commission of an intentional tort by her assailants. In this regard, the court stated the following:
We believe that the nature and purpose of uninsured motorist coverage require that the question of whether or not an injury is accidental must be determined from the victim’s standpoint. From this point of view, although inflicted intentionally, the victim’s injuries result nonetheless from an ‘accident’ within the meaning of the policy. See Leatherby Insurance Co. v. Willoughby, 315 So.2d 553 (Fla.App.1975); Celina Mutual Insurance Co. v. Saylor, 35 Ohio Misc. 81, *134 301 N.E.2d 721 (1973). See also 72 A.L.R.3d 1161.
Redden, 357 So.2d at 634.
The Redden case has been compared with Mangum v. Weigel, 393 So.2d 871 (La.Ct.App. 4th Cir.1981), in William S. Mckenzie & H. Alston Johnson, III, Insurance Law and Practice § 116, in 15 Louisiana Civil Law Treatise (3d ed.2006):
| ^Insurance policies normally require that the bodily injury be “caused by accident.” Closely related is the requirement discussed in the next section that the bodily injury arise out of the ownership, maintenance, or use of the uninsured motor vehicle ...
On the other hand, the insured in Mangum v. Weigel [393 So.2d 871 (La.App. 4th Cir.1981) ] was involved in a minor accident in the French Quarter. The other driver emerged from his vehicle shouting obscenities at the insured, came to the insured’s vehicle, and repeatedly punched the insured in the face through the open window. He then opened the door and continued the assault, causing severe injuries. The UM insurer denied that the injuries were caused by accident or arose out of the use of an uninsured vehicle. The court held that the injuries, which resulted solely from the battery committed by the uninsured motorist, were not caused by accident. Redden was distinguished because there the injuries were sustained in escape from the vehicle. The court in Mangum also found that the incident did not arise out of the “use” of the uninsured vehicle. The holding on “use” appears to be the more valid distinction between Redden and Mangum. Otherwise, if determined from the innocent insured’s viewpoint, apparently any intentional assault which arose out of the use of an uninsured vehicle would be a covered accident.
As to uninsured motorist coverage, it is particularly appropriate to examine the occurrence from the viewpoint of the injured party rather than from that of the aggressor. While the injury may be intentionally inflicted by the aggressor, to the extent that the assault is unprovoked and/or unexpected from the injured person’s standpoint the damages are just as accidental as if he had been negligently struck. There is almost no reason to consider the accident from any viewpoint but that of the injured person, except in the event that the claimant provoked the assault, as in the instant case.
In the case sub judice, plaintiff, a passenger in the insured vehicle, was the initial aggressor. Shatara walked around the two vehicles to strike Latiffany. Shatara’s grievance was that Latiffany was engaged to the father | inof her sister’s child. Latif-fany, who was outraged, then used her car to assault Shatara who had by that time returned to her sister’s car.
In this case, both Shatara, the injured person/claimant and Latiffany, the one causing the injury, were aggressors and each was guilty of an intentional act against the other. The UM coverage viewed from the injured party’s standpoint shows both provocation and fault. Plaintiffs aggressive and intentional acts provoked and caused her own injuries. Under these circumstances this incident was not accidental.

Conclusion

For the reasons set forth above, we affirm.
AFFIRMED.

. Latonya Harris, now Robinson, was initially a plaintiff in this suit. In response to USA-gencies' motion to dismiss plaintiffs’ May, 1, 2009, suspensive appeal for failure to pay costs, Latonya filed a motion to dismiss her claims against defendants with prejudice. The trial court granted the motion on March 17, 2010. Plaintiff, Shatara Harris, was granted pauper status and allowed to proceed with the appeal. Shatara is the only remaining plaintiff.