STONE, J.
The Appellant, Michael Carter ("Carter"), appeals the trial court's ruling ordering him to pay $1,000 to obtain public records from Appellees, City of Shreveport ("City"), Willie Shaw, Jr., individually and in his official capacity as Chief of Police ("Shaw"), and William Bradford, individually and in his official capacity as City Attorney ("Bradford")(collectively, "Defendants"). Additionally, Carter appeals the trial court's denial of his request that Defendants be penalized for their delay in responding to the public records requests, and the trial court's award of only $2,000 in attorney fees. For the following reasons, we amend the judgment in part to reflect an increase in attorney fees and, as amended, we affirm.
FACTS AND PROCEDURAL HISTORY
On September 14, 2015, Pamela Breedlove ("Breedlove"), counsel for Carter, faxed four separate public records requests ("the requests") to the City seeking certain documents from the Shreveport Police Department ("SPD"). The requests were also faxed to Shaw and Bradford. The requests are reproduced below:
Public Records Request # 1
1. Produce any and all Departmental Organization Chart, General Order, Bureau Manual, Human Resources Document, Departmental Memo, or other document which establishes the number authorized and/or allotted officers for the Shreveport Police Department's Five Divisions as set forth in its General Orders, which include: the Administrative Division, the Investigations Division, the Support Division, the Uniform Services East Division, and the Uniform Services West Division.
2. Produce any and all Departmental Organization Chart, General Order, Bureau Manual, Human Resources Document, Departmental Memo, or other document which establishes the number of authorized and/or allotted officers for the Shreveport Police Department in the following Bureaus and/or Units:
 i. Chief's personal staff ii. Staff Services Bureau iii. Technical Services Bureau iv. Violent Crimes Unit v. Narcotics Unit vi. Property Crimes Unit vii. Juvenile Crimes Unit viii. SRT Team ix. CSIU x. Information Services Bureau xi. Human Resources Bureau xii. Training Academy xiv. Patrol Administration xv. Community Oriented Policing Bureau xvi. USD Administration xvii. Area 1 Patrol Bureau xviii. [sic ] Area 2 Patrol Bureau xix. Area 3 Patrol Bureau xx. Area 4 Patrol Bureau xxi. Accident Investigation Unit xxii. DWI Unit xxiii. Radar Unit xxiv. Motorcycles Unit xxv. K-9 Unit xxvi. Cross Lake Patrol xxvii. Property Room/Property Management xxviii. Internal Affairs xxix. Deputy Chief Administration xxx. Any other administrative positions xxxi. Any other special units 
3. For all divisions, bureaus, units, and/or staff positions so authorized and/or allocated, produce any and all memos, summaries, emails, and/or *663 other documents showing the number of officers actually filling said positions.
4. For all divisions, bureaus, units and/or staff positions so authorized and/or allocated, produce any and all memos, summaries, emails, and/or other documents showing the number of vacancies in each such position.
Public Records Request # 2
1. Produce any and all memos, summaries, reports, and other documents that show the total number of compensatory hours earned by all officers in the Patrol Bureau since January 1, 2014.
2. Produce any and all memos, summaries, reports, and other documents that show the total number of compensatory hours taken off by all officers in the Patrol Bureau since January 1, 2014.
3. Produce any and all memos, summaries, reports, and other documents that show the total number of compensatory hours earned by all officers in the Investigative Division since January 1, 2014.
4. Produce any and all memos, summaries, reports, and other documents that show the total number of compensatory hours taken off by all officers in the Investigative Division since January 1, 2014.
5. Produce any and all memos, summaries, reports, and other documents that show the total number of compensatory hours earned by all officers in the Internal Affairs Bureau since January 1, 2014.
6. Produce any and all memos, summaries, reports, and other documents that show the total number of compensatory hours taken off by all officers in the Internal Affairs Bureau since January 1, 2014.
7. Produce any and all memos, summaries, reports, and other documents that show the total number of compensatory hours earned by all officers in the Field Support Bureau since January 1, 2014.
8. Produce any and all memos, summaries, reports, and other documents that show the total number of compensatory hours taken off by all officers in the Field Support Bureau since January 1, 2014.
If the Shreveport Police Department asserts it does not have any documents that break down this information as requested, then produce the following documents:
9. Produce any and all 2014 and 2015 time sheets for all officers in the Patrol Bureau.
10. Produce any and all 2014 and 2015 time sheets for all officers in the Investigative Division.
11. Produce any and all 2014 and 2015 time sheets for all officers in the Internal Affairs Bureau.
12. Produce any and all 2014 and 2015 time sheets for all officers in the Field Support Bureau.
Public Records Request # 3
1. Produce any and all General Orders, policies, memos, summaries, reports, emails, Internal Office Communications and other documents that establish, address, discuss, change, or interpret the requirements for compensatory time to be taken by members of the Shreveport Police Department including all divisions, bureaus, departments, and positions.
*664 2. Produce any and all General Orders, policies, memos, summaries, reports, emails, Internal Office Communications and other documents that establish, discuss, change, interpret or otherwise address the minimum staffing required for each division, bureau, unit, and/or shift of the Shreveport Police Department.
3. Produce any and all General Orders, policies, memos, summaries, reports, emails, Internal Office Communications and other documents that establish, address, discuss, or otherwise set forth the time period by which police officers must request to take compensatory time off.
4. Produce any and all General Orders, policies, memos, summaries, reports, emails, Internal Office Communications and other documents that establish, address, discuss, or otherwise set forth the rank, title, and/or person at the Department responsible for making the decision whether to grant a request for compensatory time off.
5. [sic ] Produce any and all General Orders, policies, memos, summaries, reports, emails, Internal Office Communications and other documents that establish, address, discuss, or otherwise set forth the time period by which the person making the decision whether to grant a request for compensatory time off must make the decision after the request is received.
Public Records Request # 4
1. Produce a copy of all requests for compensatory time off for Shreveport Police Department officers that were granted in 2015 (which requests includes copies of the approval by the department).
2. Produce a copy of all requests for compensatory time off for Shreveport Police Department officers that were denied in 2015 (which requests includes copies of the denial by the department).
The next day, September 15, 2015, Bradford responded to Breedlove by telephone and indicated the City was working on a response to the requests. On October 6, 2015, Carter agreed to allow Defendants until October 8, 2015 to respond. Also on October 6, 2015, Breedlove sent Defendants the following additional requests:
Public Records Request # 5
1. Produce a copy of the City of Shreveport budget items related to the purchasing of vehicles for the Shreveport Police Department for the years 2014, 2015, and 2016.
2. Produce a copy of the City of Shreveport budget items, accounting items, and other reports showing how the City has accounted for insurance payments received on wrecked Shreveport Police Department vehicles from 2012 to present.
Public Records Request # 6
1. Inventory records, reports, memos, and/or other documents that show the number of vehicles owned by the City of Shreveport and assigned to civilian employees or civilian positions of the Shreveport Police Department, including the make and model of the vehicle and mileage of the same.
2. Inventory records, reports, memos, and/or other documents that show the number of vehicles owned by the City of Shreveport and assigned to Police Chaplain of the Shreveport Police Department, including the *665 make and model of the vehicle and mileage of the same.
3. Inventory records, reports, memos, and/or other documents that show the make and model of the vehicle and mileage of vehicles owned by the City of Shreveport and assigned to the Chief of police, the Deputy Chief of Police, the Assistant Chiefs of Police, and the Assistant to the Chief of Police.
4. Inventory records, reports, memos, and/or other documents that show the make and model of the vehicle and mileage of vehicles owned by the City of Shreveport and assigned to any and all members of the Internal Affairs Division.
5. Inventory records, purchase records, and/or any other documents showing that any of the vehicles identified in response to any of the above Public Records Requests have the required insignia on both sides of the vehicles as required by Louisiana Revised Statute 49:121. If the City claims that any of the vehicles are exempt from marking pursuant to subsection E of the statute, produce any and all records showing that the City determined marking these vehicles would negate crime prevention function of the person assigned to the vehicle, including the date and rank of the person making the decision.
Public Records Request # 7
1. Inventory records, reports, memos, and/or other documents that show the number of Shreveport Police Department marked units currently owned by the City of Shreveport.
2. Inventory records, reports, memos, and/or other documents that show the year, model, mileage, and whether the vehicle is in service and being used by patrol officers of all Shreveport Police Department marked units currently owned by the City of Shreveport.
3. Inventory records, purchase agreements, invoices, bids, and/or other documents that shows the total costs to fully equip a car for use by patrol officers, including but not limited to installing partition between front and back seats, installing light bar, and other equipment necessary for patrol officers.
4. Inventory records, reports, memos, invoices, and/or other documents that show the number of cars purchased and fully equipped for patrol officers of the Shreveport Police Department since 2010.
5. Inventory records, repair records, and other documents that show the number of Shreveport Police Department marked units currently out of service for repairs.
Defendants timely responded to the added requests, but asked for additional time to respond to the September 14 requests. Carter agreed to give Defendants until Tuesday, October 13, 2015, to produce the requested records. On October 12, 2015, Bradford notified Breedlove that the Defendants still needed more time. Breedlove and Carter would not agree to an additional extension, and thereafter, on October 19, 2015, Carter filed a petition for a writ of mandamus ordering Defendants to respond to the September 14 requests. In his petition, Carter alleged Defendants were liable for penalties and attorney fees for violations of the Public Records Act, La. R.S. 44:1 et seq. Specifically, Carter alleged Defendants arbitrarily and capriciously failed to timely produce the requested records.
During the hearing on the writ of mandamus, Defendants presented testimony *666 regarding the problems associated with responding to the requests, the problem created by disclosing when particular police units would not be working, and the difficulty in redacting certain information from such a voluminous response. After testimony and discussion from Carter and Breedlove, the parties agreed that Defendants would produce all 2014 records by February 1, 2016, and produce all 2015 records by April 1, 2016. The records would be redacted to remove protected, nonresponsive information. The trial court ordered Carter to pay $1,000 for copies of the records. Additionally, the trial court found Defendants were not arbitrary and capricious in their delayed response to the requests and declined to award Carter any penalties. The trial court awarded Carter $2,000 in attorney fees. Carter now appeals.
DISCUSSION
In civil cases, the appropriate standard for appellate review of factual determinations is the manifest error-clearly wrong standard, which precludes setting aside a trial court's finding of fact unless that finding is clearly wrong in light of the record reviewed in its entirety. Cenac v. Public Access Water Rights Ass'n, 2002-2660 (La. 06/27/03), 851 So.2d 1006, citing Rosell v. ESCO , 549 So.2d 840 (La. 1989) ; Hopkins v. Nola, 46,114 (La. App. 2 Cir. 03/09/11), 58 So.3d 1075. To reverse a factfinder's determination under this standard of review, an appellate court must undertake a two-part inquiry: (1) the court must find from the record that a reasonable factual basis does not exist for the finding of the trier of fact; and (2) the court must further determine the record establishes the finding is clearly wrong. Stobart v. State Dept. of Transp. & Dev., 617 So.2d 880 (La. 1993). Ultimately, the issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Id. If the factual findings are reasonable in light of the record reviewed in its entirety, a reviewing court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Id.
Civil penalties
Carter asserts the trial court erred in failing to award him civil penalties pursuant to La. R.S. 44:35(E)(1) because Defendants arbitrarily and capriciously failed to respond in the 5-day time period prescribed by La. R.S. 44:35(A).
La. R.S. 44:32, in pertinent part, provides:
A. The custodian shall present any public record to any person of the age of majority who so requests. The custodian shall make no inquiry of any person who applies for a public record, except an inquiry as to the age and identification of the person and may require the person to sign a register and shall not review, examine or scrutinize any copy, photograph, or memoranda in the possession of any such person; and shall extend to the person all reasonable comfort and facility for the full exercise of the right granted by this Chapter; provided that nothing herein contained shall prevent the custodian from maintaining such vigilance as is required to prevent alteration of any record while it is being examined; and provided further, that examinations of records under the authority of this Section must be conducted during regular office or working hours, unless the custodian shall authorize examination of records in other than regular office or working hours. In this event the persons designated *667 to represent the custodian during such examination shall be entitled to reasonable compensation to be paid to them by the public body having custody of such record, out of funds provided in advance by the person examining such record in other than regular office or working hours.
B. If any record contains material which is not a public record, the custodian may separate the nonpublic record and make the public record available for examination.
Proceedings for the issuance of a writ of mandamus, injunctive or declaratory relief, attorney fees, costs, and damages may be instituted by any person who has been denied the right to inspect or copy a public record, either by a final determination of the custodian or by the passage of five days, exclusive of weekends and legal public holidays, from the date of his request without receiving a written final determination by the custodian. La. R.S. 44:35(A). The remedy of civil penalties and damages is provided by La. R.S. 44:35(E)(1), which states:
If the court finds that the custodian arbitrarily or capriciously withheld the requested record or unreasonably or arbitrarily failed to respond to the request as required by R.S. 44:32, it may award the requester any actual damages proven by him to have resulted from the actions of the custodian except as hereinafter provided. In addition, if the court finds that the custodian unreasonably or arbitrarily failed to respond to the request as required by R.S. 44:32 it may award the requester civil penalties not to exceed one hundred dollars per day, exclusive of Saturdays, Sundays, and legal public holidays for each such day of such failure to give notification.
Whether civil penalties or damages may be awarded under La. R.S. 44:35(E)(1) is based on whether the custodian arbitrarily or capriciously withheld the requested records or arbitrarily or unreasonably failed to respond to the request as required by La. R.S. 44:32. The terms "arbitrarily and capricious" mean willful and unreasoning action, absent consideration and in disregard of the facts and circumstances of the case. However, when there is room for two opinions, an action is not arbitrary or capricious when exercised honestly and upon due consideration, even though it may be believed an erroneous conclusion has been reached. Toups v. City of Shreveport, 10-1559 (La. 03/15/11), 60 So.3d 1215. An action is arbitrary and capricious if it is without rational basis. Atchison v. Monroe Mun. Fire & Police Civil Serv. Bd., 46,178 (La. App. 2 Cir. 05/04/11), 64 So.3d 874.
The requests made by Carter were indubitably onerous and burdensome. Moreover, the unarguably primitive state of record keeping by SPD must be taken into account when determining Defendants' reasonableness in responding to the requests. Many of the personnel records sought by Carter had to be arduously compiled by hand reviews and sorting, doubtless a tedious and labor-intensive task. With these facts in mind, it was unrealistic to assume that SPD could produce the requested documents in the allotted 5 days. The record reflects that on September 5, 2015, one day after the requests were sent, Bradford telephoned Breedlove and advised her the City was working on the responses. This is clear indication that the City was not intentionally trying to ignore Carter or avoid responding to the requests.
In a letter dated October 6, 2015, Carter agreed to give Defendants additional time to respond to the requests; however, *668 Carter also requested additional documentation from Defendants, on top of what was already requested. Defendants timely responded to the subsequent requests but notified Carter of the need for additional time to respond to the September 4 requests. This again suggests Defendants were not intentionally attempting to evade Carter and, in fact, shows Defendants' good faith efforts to maintain communication.
During the hearing, Carter acknowledged that he had received all the documents except the time sheets, but agreed that a few additional months, about 5 months total, was necessary and reasonable for Defendants to produce the redacted time sheets. The record does not reflect, nor does Carter argue, Defendants did not produce the time sheets by the agreed upon deadlines.
Based on the evidence presented, we find Defendants fully complied with the provisions of La. R.S. 44:32, and there exists a factual basis for the trial court's determination that Defendants did not arbitrarily and capriciously withhold the requested records from Carter.
Costs of Copying Public Records
Carter argues Defendants demanded excessive labor charges for the requests. Specifically, Carter argues that instead of paying $1,000 for copies, he should have been required to pay only $588.60, which is the standard rate of 15 cents per page copied. Carter argues the additional $411.40 is for labor costs, and there is no authority for Defendants to impose such cost. According to Carter, Defendants have never required anyone else to pay labor costs for public records.
Where two permissible views of the evidence exist, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. Rosell, supra; Turner v. State Farm Mutual Auto Ins. Co., 32,423 (La. App. 2 Cir. 10/27/99), 743 So.2d 924.
During the hearing on Carter's writ of mandamus, the City presented Carter with an invoice for $3,978.60 for the costs associated with copying the documents he requested. The City argued the total was based on having to pull at least 40 police officers away from their normal duties to copy the records. Carter argued he should only be required to pay $588.60 for the documents, 15 cents per page which is standard for copying charges.
We find $1,000 was a reasonable amount for the copies of the records. The trial court apparently took into consideration the copious documents requested by Carter and the obviously labor-intensive task of copying the documents. Moreover, considering the City actually requested $3,978.60, we find the trial court did not abuse its discretion by ordering Carter to pay $1,000 for the copies.
Redacted Time Sheets
Carter contends there is no legal authority to support Defendants' claims that parts of the time sheets needed to be redacted. Carter asserts unredacted time sheets are public record, and the trial court erred in allowing Defendants to redact certain information from the time sheets before providing Carter with copies.
The record does not reflect Carter contested or otherwise objected to the trial court's decision to allow the City to redact portions of the time sheets before producing them. Failure to contemporaneously object constitutes a waiver of the right to complain on appeal. Zellinger v.Amalgamated Clothing, 28,127 (La. App. 2 Cir. 04/03/96), 683 So.2d 726 ; Martinez v. Schumpert Med. Ctr., 27,000 (La. App. 2 Cir. 05/10/95), 655 So.2d 649. Carter's failure to contemporaneously object to the *669 redaction constitutes a waiver of his right to complain on appeal that no parts of the time sheets should have been redacted.
DVD Costs
Carter also contends the trial court erred in not ordering Defendants to refund him for the $50 payments he previously paid for DVDs containing scanned versions of some of the requested documents. According to Carter, Defendants chose to scan the documents instead of copying them onto paper, and DVD charges are not delineated in the City Ordinance.
The issue of the $50 payments for the DVDs was never before the trial court. Carter made those payments prior to the hearing on the writ of mandamus and did not raise the issue during the hearing. Appellate courts generally will not consider issues raised for the first time on appeal. Costello v. Hardy, 2003-1146 (La. 01/21/04), 864 So.2d 129. Since the trial court never rendered a decision concerning the validity of the $50 payments for the DVDs, we pretermit any discussion on this issue.
Attorney Fees
Additionally, Carter asserts the trial court erred in awarding Carter only $2,000 in attorney fees.
The public's right to access public records is a fundamental right guaranteed by the state constitution. La. Const. art. 12, § 3 ; Title Research Corp. v. Rausch, 450 So.2d 933 (La. 1984). In accordance with this fundamental right, the public records statutes should be construed liberally. Id. With regard to attorney fees and costs, La. R.S. 44:35(D) states:
D. If a person seeking the right to inspect or to receive a copy of a public record prevails in such suit, he shall be awarded reasonable attorney fees and other costs of litigation. If such person prevails in part, the court may in its discretion award him reasonable attorney fees or an appropriate portion thereof.
The amount of an award for attorney fees is within the discretion of the trial court. Dwyer v. Early , 2002-1545 (La. App. 4 Cir. 03/12/03), 842 So.2d 1124, writ denied , 2003-1013 (La. 05/30/03), 845 So.2d 1053 ; Bohn v. Louisiana Farm Bureau Mut. Ins. Co., 482 So.2d 843 (La. App. 2 Cir. 1986), writs denied, 486 So.2d 750 (La. 1986)and 486 So.2d 752 (La. 1986). Generally, each case is considered in light of its own facts and circumstances, but the amount awarded must be reasonable. Bohn, supra.
Breedlove submitted an affidavit wherein she stated she spent 21.7 hours drafting the writ of mandamus petition, corresponding with the City Attorney's Office and defense counsel, appearing at trial, participating in telephone conferences, drafting motions and memoranda, and preparing exhibits for those motions. She attested that her standard billing rate was $175 per hour, which is reasonable for an experienced attorney who has been practicing law for over 23 years.
There was no hearing on attorney fees and Defendants never challenged Breedlove's affidavit or offered contradictory evidence. It was within the trial court's discretion to determine what amount, if any, was reasonable for attorney fees. However, the trial court provided no reasons for its $2,000 award nor can we find any reasonable basis in the record supporting the trial court's decision, considering the work done in this matter from the filing of the initial petition until the judgment on the attorney fees and costs was obtained. Having reviewed this record and the *670 affidavit submitted by Breedlove, we find the trial court abused its discretion in awarding only $2,000 in attorney fees. Accordingly, we find that the trial attorney fees should be increased to $3,797 for Breedlove's 21.7 hours of work at $175 per hour.
As for additional attorney fees for work done on appeal, the general rule is that an increase in attorney fees is usually allowed where a party was awarded attorney fees by the trial court and is forced to and successfully defends an appeal. Genusa v. Dominique , 97-0047 (La. App. 1st Cir. 02/20/98), 708 So.2d 784, 792. It is within the appellate court's discretion to award or increase attorney fees for appellate work. Nesbitt v. Nesbitt, 46,514 (La. App. 2 Cir. 09/21/11), 79 So.3d 347, writ denied, 2011-2301 (La. 12/02/11), 76 So.3d 1178. Carter challenged numerous parts of the trial court's judgment, but succeeded on only one of the issues he presented. Since Carter successfully defended a portion of the appeal, we award him an additional $1,200 in attorney fees for services rendered in connection with the appeal.
CONCLUSION
For the foregoing reasons, the ruling of the trial court is affirmed as it pertains to civil penalties and the costs of producing copies. The trial court's $2,000 judgment for attorney fees is reversed and Carter is awarded attorney's fees in the amount of $4,997. The appellate court costs in the amount of $1,492.50 are to be equally split between Carter and the City of Shreveport in accord with La. R.S. 13:5112.
AMENDED AND, AS AMENDED, AFFIRMED.