Judgment rendered May 22, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 55,660-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

COY FORTENBERRY                          Plaintiff-Appellee

versus

JEREMY EVANS, IN HIS                     Defendant-Appellant
CAPACITY AS DESOTO PARISH
CLERK OF COURT

* * * * *

Appealed from the
Forty-Second Judicial District Court for the
Parish of DeSoto, Louisiana
Trial Court No. 84196

Honorable Nicholas E. Gasper, Judge

* * * * *

WEEMS, SCHIMPF, HAINES &            Counsel for Appellant
MOORE, APLC
By: Kenneth P. Haines

RONALD J. MICIOTTO

SERVICE LAW FIRM, LLC               Counsel for Appellee
By: John M. Castille, II

* * * * *

Before THOMPSON, ROBINSON, and MARCOTTE, JJ.

**MARCOTTE, J.**

This civil appeal arises from the 42nd Judicial District Court, Parish of DeSoto, the Honorable Nicholas E. Gasper, presiding. Appellant-Defendant, Jeremy Evans, in his capacity as Clerk of Court for DeSoto Parish, appeals the trial court's judgment: (1) granting the petition for writ of mandamus filed by appellee-plaintiff, Coy Fortenberry; (2) assessing civil penalties to defendant, personally, in the amount of $4,600; (3) and assessing defendant and the Office of the Clerk of Court, *in solido*, with attorney fees in the amount of $10,648.75 and the court costs incurred by Lisa Lobrano Burson and S. Scott Wilfong. For the following reasons, the trial court's judgment is affirmed.

## FACTS AND PROCEDURAL HISTORY

On June 30, 2023, plaintiff, Coy Fortenberry ("Fortenberry"), filed a petition for writ of mandamus directed to the Clerk of Court for DeSoto Parish, Jeremy Evans ("Evans" or "Clerk of Court"), and a petition for damages, attorney fees, and costs. Fortenberry stated that Evans, as the Clerk of Court, was the custodian of the records for documents contained within the Office of the Clerk of Court for DeSoto Parish ("Clerk's Office"). Fortenberry stated that he sent a public records request to the Clerk's Office on March 6, 2023, via email. His request was attached to his petition, and it included the following:

> (1) Any and all salaries, bonuses, and overtime payments for each employee and contractor, by the year, for the years of 2016 through 2022.

> (2) Any and all travel expenses or reimbursement paid, by year, for yourself or an employee, including the necessary documentation provided for the expense and/or reimbursement, by named employee, by year, for the years 2016 through 2022.

(3) Any and all expenditures for training, whether in office or at an offsite location for employees, by year, for the years 2016 through 2022.

(4) Any and all expenditures for outreach donations to persons or organizations, for items including food, meals, gifts, prizes, or any item of value.

(5) Any and all advertising and/or public service announcements in all media formats, including, social media, print, outdoor advertising, radio, broadcast, and cable television media.

(6) Any and all payments made to Rougarou Consulting, and/or any agent or employee of Rougarou Consulting, including Steve Verzwyvelt. Include all invoices provided from the same, by year, for the years 2016 to date of your response hereto.

(7) Any and all payments for attorney fees for legal representation for the Clerk of Court's office, by year, for the years 2016 to the date of your response hereto.

Fortenberry said that he would accept the records in electronic format, but if there was a charge associated with the request, he asked that the Clerk's Office inform him "prior to your performance if the estimated cost is more than $100." On March, 13, 2023, Susan Hunt ("Hunt"), the Deputy Clerk of Court for the Clerk's Office, sent an email to Fortenberry acknowledging receipt of his records request on March 6, 2013. She said the Clerk's Office was "compiling the records from your request and determining if anything in the request is not public record." Hunt said the records would be available to Fortenberry for his inspection on or after April 6, 2023. Hunt stated that the cost of reproduction of the records was $1.00 per page, but she did not provide the total cost of production in her email.

Fortenberry said that he did not hear from Hunt on or after April 6, 2023. On April 13, 2023, Fortenberry emailed Hunt enquiring about the status of the requested records. Fortenberry wrote:

> In your email response on March 13 to my public records request, you stated that the records we requested would be available on April 6 and thereafter.
>
> Are the records now available? And if so, what is the cost to provide an electronic version in PDF format? If that is not available, what is the cost to provide them as paper copies?

On the same day, Hunt responded saying that the records were still being compiled. On April 20, 2023, Fortenberry called Hunt seeking the records. Hunt informed him that she did not have an estimated time of completion for the records and would inquire with the certified public accountant ("CPA") for an update about the records; she said she would follow up with Fortenberry via email. Fortenberry stated that as of the date of the filing of his petition for a writ of mandamus, no follow up email or further response had been provided by the Clerk's Office.

Fortenberry claimed that Evans and Hunt sought to thwart his constitutional right to examine public records and had unreasonably or arbitrarily failed to respond to his request and withheld the records. Fortenberry sought a writ of mandamus directing Evans to produce the records. Fortenberry said that he was also entitled to statutory damages, attorney fees, and costs against Evans, personally, and against the Clerk's Office, *in solido*. Fortenberry also asserted that he was entitled to penalties of $100 per day from the date of the Clerk's Office's failure to respond, April 20, 2023.

On July 18, 2023, the Clerk's Office issued to Fortenberry a subpoena for witness and a subpoena *duces tecum*. The subpoena *duces tecum* requested that Fortenberry provide: (1) copies of his bank statements for 2022 and 2023; (2) copies of any payments made by him to his attorney,

3

John M. Castille, II ("Atty. Castille"), and/or Service Law Firm, LLC ("Service Law"); (3) copies of any fee agreements or contracts of retainer between him and Atty. Castille or Service Law; (4) copies of any checks received by S. Scott Wilfong ("Wilfong") and/or Capital Business Services, LLC ("Capital Business"); (5) copies of emails between him and Wilfong and/or Capital Business; and (6) copies of any payments made by him to Wilfong or Capital Business.[1]

On August 1, 2023, Fortenberry filed a "Motion to Cancel Records Deposition and to Quash Subpoena to Produce Documents." Fortenberry stated that the subpoenas were served on July 26, 2023, for a deposition scheduled for August 4, 2023, in DeSoto Parish.[2] Fortenberry argued that the subpoenas sought information outside the scope of the law and violated his attorney-client privilege. Fortenberry claimed the subpoenas were issued in bad faith and in such a manner as to annoy, embarrass, or oppress him and he was entitled to an order quashing the subpoena *duces tecum*; he also sought attorney fees, penalties, and costs. The trial court later signed an order cancelling the records deposition of Fortenberry and quashed the subpoena compelling his presence at the deposition.

On August 2, 2023, attorney Lisa Lobrano Burson ("Atty. Lobrano") filed a motion to quash a subpoena that Evans had served upon her compelling her to attend a hearing on August 4, 2023. Atty. Lobrano asserted that she was an attorney and could not be served without a

---

[1] Wilfong was a political consultant hired to manage the campaign of a candidate running for the DeSoto Parish Clerk of Court.

[2] Fortenberry resided in Ascension Parish.

4

contradictory hearing, as required by La. C.E. art. 508 and that she had no information relative to Fortenberry's petition. Atty. Lobrano stated that she was running for Clerk of Court for DeSoto Parish and the election was to take place on October 14, 2023. She claimed, "The only reasonable conclusion as basis for the subpoena … by Defendant Evans is to attempt to harass and … intimidate Mover, the Defendant's political opponent."[3]

On August 3, 2023, Evans answered the petition stating that it was unknown if Fortenberry was the person who sent the email containing the records request or if he was the person making the records request. Evans stated that Fortenberry told the Clerk's Office that he was a student at LSU working on a class project, and the information sought was not information that would be generally known to LSU students. Evans argued that the request was too particular to come from an LSU student. Evans acknowledged that, under La. R.S. 44:32, a custodian of records may inquire as to the age and identification of the person requesting inspection of the public records. He said he believed Fortenberry was not the actual person desiring inspection of the public records, but was "merely a subterfuge for an unidentified person who seeks production of the records for political or other purposes."

Evans stated that Hunt was under no obligation to contact Fortenberry and he made no attempt to inspect the requested records. Evans claimed that on July 14, 2023, an unidentified person gave an envelope to the Clerk's Office which contained a money order made out to the Clerk's Office for the

---

[3] Evans also subpoenaed Wilfong to testify, who filed a motion to quash that subpoena. Wilfong's motion to quash does not appear in the record, but it was discussed at the trial in this matter.

"records request of Coy Fortenberry" and a check from the Lobrano Law Firm for $115, made payable to Chadwick Melder ("Melder"), her campaign manager. On the same day, Fortenberry contacted counsel for Evans to inform him that the check for payment on the records was being delivered.

Evans stated that on July 14, 2023, counsel for the Clerk of Court then forwarded 113 pages of records to Fortenberry. Evans stated that the Clerk of Court is legally entitled to withhold production of the records until payment for the costs of production are paid. Evans claimed that Fortenberry had made no objection regarding deficiency of the records produced by the time the answer was filed. Evans argued that the request for the records was, therefore, moot. Evans claimed that the Clerk's Office offered to produce the records free of charge and to refund the costs of filing his petition, which Fortenberry refused. He also stated that Fortenberry refused to produce evidence of any attorney fees incurred by him or proof of his damages.

Evans asserted that the obligation had been extinguished by the Clerk's Office's compliance with the records request. Evans argued that the writ of mandamus should have been denied because "Fortenberry is not the true person behind the public records request." Evans said he believed that to be true because of the specific request Fortenberry made for information about payments made to Rougarou Consulting, including Steve Verzwyveldt. Evans stated, "There is no possible way that Coy Fortenberry, a person from Ascension Parish, and purported student at LSU would be able to construct a public records request seeking such a pointed and detailed disclosure." Evans then referenced a subpoena that Atty. Lobrano, an

6

assistant district attorney for the Office of the District Attorney for the 42nd Judicial District Court, had issued from the D.A.'s office upon the Clerk's Office seeking production of records showing payments from the Clerk's Office to Rougarou Consulting. Those records were produced in July 2022.

Evans went on to state, "Now, months later, it is believed Lisa Lobrano used her position as a commissioned assistant district attorney to obtain information that she is now clandestinely attempting to use in her campaign as a candidate for the Office of Clerk of Court for DeSoto Parish." He suggested that someone from the D.A.'s office supplied Fortenberry with the information for the purported public records request. Evans also stated that the money order made out to the Clerk's Office for Fortenberry's public records request and a check from Lobrano Law Firm made payable to Atty. Lobrano's campaign manager showed that she abused her position as assistant district attorney to gain an advantage in her race for DeSoto Parish Clerk of Court. Evans further asserted that Fortenberry requested that if the costs of reproduction exceeded $100, then production be withheld until he was so informed. Evans also claimed that, under La. R.S. 44:32, he was allowed to deny access after reasonable attempts to narrow or specify the wishes of the requestor. Evans asked that Fortenberry's petition be denied.

On August 4, 2023, Evans filed an exception of no cause of action, arguing that the matter was moot because the records were given to Fortenberry on July 14, 2023, after he paid the costs of production.

On August 4, 2023, a hearing was held on the writ of mandamus, motions to quash, and the exception of no cause of action. At the beginning of the hearing, the trial court noted that Fortenberry's petition was filed at

7

the Clerk's Office on June 30, 2023, but it did not arrive at the trial judge's office until July 11, 2023. The trial court granted Atty. Lobrano's and Wilfong's motions to quash and denied Evans' exception of no cause of action. Fortenberry testified that he was 23 years old and not an interdict. Fortenberry stated that he wrote and sent a records request to the Clerk's Office. He received a response to his request via email from Hunt. Hunt's March 13, 2023, email was read into the record.

Fortenberry testified that he did not go to the Clerk's Office on April 6, 2023, to inspect the records because he thought they were likely not ready at that time. He stated that on April 13, 2023, he sent a follow-up email to Hunt about the status of his request and the cost of getting an electronic or paper copy of the records. Hunt responded on April 13, 2023, stating that the Clerk's Office was still gathering the information, and as soon as that task was complete, the office would let Fortenberry know the cost of reproduction. Hunt's second email was admitted.

Fortenberry testified that he called the Clerk's Office on April 20, 2023, to speak with Hunt about the records request. She informed him that she had to check with the CPA about the cost and "what the holdup is." Fortenberry testified that Hunt said she would send him an email that same day with the information from the CPA. He said that she did not do so. Fortenberry said he did not receive a response from the Clerk's Office until he filed his writ of mandamus on June 30, 2023. On July 14, 2023, Fortenberry received a pdf containing records from the Clerk's Office. Regarding his request for the Clerk's Office's salaries, bonuses, and overtime payments made for each employee, the employees' names were

8

redacted. Regarding his requests for records about travel reimbursement for Clerk's Office employees, expenditures for training, and payments for legal representation for the years 2016 through 2022, Fortenberry testified that records for the months of January through June were missing for each year.

Fortenberry stated that he did not receive any information about his fourth request about Clerk's Office expenditures for outreach donations to persons or organizations. Regarding his fifth records request, about advertising and public service announcements, Fortenberry stated that the response did not detail what the media was for. He testified that he received an adequate response to his sixth request.

Fortenberry stated that he did not receive a writing from the Clerk's Office within 3 legal days of his request. Fortenberry said that he received a writing from the Clerk's Office fixing a date and time when he could review the records, which was April 6, 2023. He was given notice of that date on March 13, 2023. Fortenberry said that the records were not certified or signed by Evans, and there was no writing from Evans detailing what was redacted. Fortenberry stated that he incurred expenses as a result of his suit.

On cross-examination, Fortenberry agreed that he informed the Clerk's Office that he expected to be notified of the cost of producing the records before it acted on his request, but he was not notified. Fortenberry said that he and his boss at the time, Melder, made the records request together. Fortenberry stated that he did not make any attempt to go to the Clerk's Office to review the requested records.

Fortenberry said that he did not contact Evans to let him know that the records were deficient, but he asked his counsel to discuss it with Evans'

9

counsel. Fortenberry stated that the records were made available only after the suit was filed and he was not aware if they were available prior to June 30, 2023.

Evans testified and said that after speaking with his CPA, he understood that the records provided to Fortenberry were incomplete. He said that the Clerk's Office had a Facebook account which was managed by Hunt. Evans testified about certain events that were posted on the Clerk's Office Facebook page. He paid for some events personally and some were paid from his campaign account. Evans said that, for more than one event, the Clerk's Office purchased the food. Evans acknowledged that those payments were not included in the records provided in response to Fortenberry's fourth records request.

Evans said that he inquired about the status of the records request with his office and his CPA. His CPA advised him to have his attorney review the documents to see what should be redacted. He said that the records were misplaced temporarily because his attorney was moving to a different office. He was unaware that the records had not been produced to Fortenberry until the suit was filed. The plaintiff rested. Evans moved for an involuntary dismissal, arguing the records had been produced. The trial court orally denied the motion.

James Sheffield ("Sheffield") testified for the defense. He stated that he was licensed to practice as a CPA and worked for the Clerk's Office. He said that he received Fortenberry's records request on Wednesday, March 15, 2023. Sheffield stated that between March 15 and April 15 is the busiest time of year for his practice. Upon receiving the records request he

discussed it with his managers and asked to look at the request through the weekend to make sure he understood everything that was being requested. Sheffield also said that he wanted to review the Louisiana Revised Statutes to ensure that he was not providing prohibited information, such as addresses, social security numbers, banking information, etc.

Sheffield contacted his external auditor, who contacted the Legislative Auditor's office to make sure he spoke with their counsel and provided only the information that he was required to provide and would not cause an audit issue. Sheffield said it was around April 29, 2023, that he provided the records to Hunt. Sheffield said that the sheet including employee payroll that he provided to Hunt was not redacted. Sheffield said he did not understand why the months of January through June were missing for each year of the documents related to Fortenberry's second, third, and fifth records requests.

Sheffield said that no records were produced for Fortenberry's fourth request because of the use in the request of the word "donation." Sheffield said that donations of public funds are not allowed, and any related expenditure would be categorized as an office expense and not a donation and he was unaware of any expenditure by the Clerk's Office that qualified as a donation.

Evans was again called to testify and stated that his office received a public records request from Fortenberry on March 6, 2023. He said that he had Hunt handle the request; he did not make the decision to redact the information or determine which documents were responsive to Fortenberry's request. Evans said that he did not direct anyone to withhold documents

11

from the request. Evans agreed that it was his counsel who redacted the payroll documents and he had no issue with turning over the documents unredacted. Evans testified that he had not made any donations with Clerk's Office funds to anyone.

Evans said that his counsel informed him about moving offices, but never told him that the responsive records his counsel was reviewing were lost. Evans said that, upon receipt of payment for the production of the records, he informed his counsel who responded that he would then transmit the records. Defense rested.

The trial court ordered that the records from the missing months be produced to Fortenberry. The trial court acknowledged that Fortenberry's fifth request, regarding advertising, needed clarification.

On August 9, 2023, the trial court rendered an oral judgment. It first said that it was not concerned about the redaction of the employees' names in the response to Fortenberry's first records request because the Clerk's Office did so under the advice of counsel. The trial court said that the Clerk's Office's lack of response to Fortenberry's fourth request, about donations made by the Clerk's Office, was appropriate given the wording of the request and the fact that public funds may not be donated. The trial court pointed out that Fortenberry was never advised by the Clerk's Office of what the cost of producing the documents was.

The trial court stated that Sheffield did not complete his review of the records until April 28, 2023, a month and 20 days after Fortenberry made the request. The trial court said that the records were then reviewed by Evans' counsel, who was moving offices at the time. The trial court did not find

that to be an adequate explanation for the delay in producing the records because of the time-sensitive nature of public records requests and the fact that Evans was represented by more than one attorney. The trial court said that the records could have been reviewed by counsel by May 5, 2023, but they were not made available to Fortenberry until July 14, 2023. The trial court also noted that no one from the Clerk's Office notified Fortenberry that the records were ready, and they were not produced until Fortenberry filed suit. The trial court found that Fortenberry hiring counsel was necessary and approved awarding attorney fees.

On August 18, 2023, the trial court signed a written judgment granting the writ of mandamus, assessing civil penalties to Evans personally in the amount of $4,600, assessing Evans and the Clerk's Office, *in solido*, with attorney fees in the amount of $10,648.75, and assessing Evans and the Clerk's Office, *in solido*, with the court costs incurred by Atty. Lobrano and Wilfong.

On August 21, 2023, the trial court signed its written reasons for judgment. The trial court again noted that Fortenberry's petition was time-stamped as being filed on Friday, June 30, 2023, at 8:31 a.m., and it included an order setting the matter for trial. However, the petition and order were not given to the judge's office until July 11, 2023, which the trial court found to be an "inexplicable delay." The trial court stated that there were four issues before the court: (1) were the requested records public records; (2) were the records produced within the time required by law; (3) if the records were not timely produced, was Fortenberry entitled to attorney fees;

13

and (4) if the records were not timely produced, were they unreasonably and arbitrarily withheld, such that Evans was subject to civil penalties?

The trial court found that the first issue was conceded when Evans did not timely object to the request and produced the records on July 14. The trial court stated that the language of La. R.S. 44:32(A)(1) was "clear and unequivocal" that the custodian of the records "shall make no inquiry … except an inquiry as to the age and identification of the person" requesting the records. The court found that Evans' argument that Fortenberry was not the true person behind the records request and was not entitled to a writ of mandamus was unsupported by the law.

The trial court stated that the only reason Evans subpoenaed Atty. Lobrano was to inquire into her connection to Fortenberry and "explore some of the accusations against her in the answer." The trial court wrote that any connection between Atty. Lobrano and Fortenberry was irrelevant to the case. The court noted that Evans did not attempt to make an argument supporting the subpoenas directed at Wilfong. The court stated that "it is clear that the subpoenas were issued for no other reason than to harass and annoy the recipients." The trial court also stated that much of the subpoena *duces tecum* issued to Fortenberry was not relevant, particularly the requests in which Fortenberry was asked to provide any checks Fortenberry received from or payments made to Wilfong and any email correspondence between the two. As to the other requests related to Fortenberry's legal representation, the trial court said that only the attorney invoice was relevant.

14

Regarding the incomplete nature of the production of the records, the court stated that Evans' attorney asserted that Fortenberry was responsible for notifying them of issues with the documents produced. The court said that it could not ignore the fact that the records were not produced at the end of April, when Sheffield was finished with them because Evans' counsel needed time to review 113 pages of documents. The court found it incomprehensible that after having 2 ½ months to review the documents, Evans' counsel did not notice that half the information was missing.

The trial court next examined the attorney fees. The trial court said that Evans' first argument, that Fortenberry was not entitled to attorney fees because he was not denied access to the requested records, ignored the language of La. R.S. 44:35(A). The trial court said that Fortenberry was provided an estimated date of April 6, but the records were not ready at that time and no new date was given. The trial court also pointed out that Fortenberry was told by the Clerk's Office that he would be notified when the records were available, which did not happen.

The trial court addressed Evans' second argument regarding attorney fees, that Fortenberry was not entitled to the fees because he never appeared at the Clerk's Office to review the records. The trial court pointed out that had Fortenberry showed up to inspect the records before April 28, they were still with Sheffield, and if he had shown up after that date, the records were with Evans' counsel. The court said there was no testimony about when the records arrived at the Clerk's Office after they were reviewed by Sheffield and Evans' counsel, and the law did not require Fortenberry to make

15

frequent trips to the Clerk's Office, given that the trips would have been useless.

The court addressed Evans' third argument about attorney fees, that Fortenberry had an obligation to make regular inquiries concerning the records production. The trial court said that argument was contrary to the law and ignored the assurances from Hunt that Fortenberry would be notified when the records were ready, showing that Evans and Hunt knew they were responsible for notifying Fortenberry when the records were ready.

The court next addressed Evans' last argument about attorney fees, that the records were produced on July 14, before the trial date, rendering the writ moot and making the fees unnecessary. The trial court said that that argument ignored the fact that the records were not produced until the suit was filed and probably never would have been produced otherwise. The court stated that permitting Evans' reasoning would allow public records custodians to deny access to public records until suit was filed, after a member of the public incurred the costs of instituting proceedings, unilaterally precluding the member of the public any possibility of prevailing in his suit.

The court turned to the issue of whether Evans acted unreasonably and arbitrarily, justifying civil penalties. The court said that, considering the testimony of Sheffield, the lack of response before April 28 was reasonable; it was also reasonable to have the documents reviewed by an attorney. However, the court said that one week was more than enough time for an attorney to review 113 pages of documents. The court said it was provided

with no reasonable explanation why Evans did not respond to the request by May 8.

The court said that Evans' answer provided a better explanation for the failure to produce the records. The trial court noted that the answer placed significant focus on Atty. Lobrano and Wilfong and that Evans asserted that he should not be required to produce the records because the request was actually made by Atty. Lobrano. The trial court stated, "The answer and the harassing subpoenas, make it abundantly clear that the response was withheld for political reasons, which is completely unreasonable and arbitrary." The court said that for the purposes of calculating the civil penalties, it would accept July 14 as the date the records were produced. The court found that 46 days, exclusive of weekends and holidays, elapsed between May 8 and July 14. The trial court determined that assessing Evans with a civil penalty in the amount of $4,600, or $100 per day was appropriate. Evans now appeals.

## DISCUSSION

*Access to Public Records*

In his first assignment of error, appellant states that the trial court erred by concluding that the Clerk of Court denied Fortenberry access to public records in violation of La. R.S. 44:32. Appellant argues that Fortenberry was not denied the right to inspect, copy, reproduce, or obtain a copy of a public record. Evans claims that Fortenberry never appeared at the Clerk's Office to inspect the records, and the Clerk of Court did not determine that any part of the request was not a public record. Evans states that the custodian of the records is statutorily relieved of any obligation to

17

produce copies of requested records until payment of costs. Evans contends that, under La. R.S. 44:32(C)(1)(a), as the custodian of public records, it is his duty to provide copies to persons requesting records, unless the requestor fails to pay the applicable copying fees after being notified of the amount in advance of production.

Appellant argues that Fortenberry indicated that production of records should be withheld, if the cost of production exceeded $100. Evans states that payment for production was not received until July 13, 2023, and production was transmitted on July 14, 2023. Evans asks that the trial court's ruling be reversed.

Appellee counters that he did not received the records until nearly four months after his initial public records request and almost three months after the promised date of availability for inspection. Fortenberry states that Evans did not provide the documents for inspection or reproduction, and neither did he provide an estimate of the copy costs. Fortenberry contends that the only way to enforce his rights was to file suit. He asks that the trial court's ruling be affirmed.

Mandamus is an extraordinary remedy to be applied where the law provides no relief by ordinary means or where the delay involved in obtaining ordinary relief may cause injustice. La. C.C.P. art. 3862; *Zillow, Inc. v. Gardner*, 21-1172 (La. App. 1 Cir. 4/8/22), 341 So. 3d 765. Further, a writ of mandamus directed to a public officer is proper only to compel him to perform a ministerial duty required by law. La. C.C.P. art. 3863. A ministerial duty is a duty in which no element of discretion is left to the public officer. It is a simple, definite duty, arising under conditions admitted

18

or proved to exist, and imposed by law.  *Hoag v. State*, 04-0857 (La. 12/1/04), 889 So. 2d 1019.

A trial court's findings of fact in a mandamus proceeding are subject to a manifest error standard of review.  *Cooley v. Williams*, 22-0564 (La. App. 4 Cir. 1/30/23), 358 So. 3d 127, *writ denied*, 23-00289 (La. 4/25/23), 359 So. 3d 978.  However, where statutory interpretation is at issue in mandamus proceedings, appellate courts apply a *de novo* standard of review.  *Town of Sterlington v. Greater Ouachita Water Co.*, 52,482 (La. App. 2 Cir. 4/10/19), 268 So. 3d 1257, *writ denied*, 19-00913 (La. 9/24/19), 279 So. 3d 386, and *writ denied*, 19-00717 (La. 9/24/19), 279 So. 3d 931.

It is well settled that the public's right of access to public records is a fundamental right guaranteed by both the Louisiana Constitution and the Public Records Act set forth in La. R.S. 44:1, *et seq.*  *Carolina Biological Supply Co. v. E. Baton Rouge Parish Sch. Bd.*, 15-1080 (La. App. 1 Cir. 8/31/16), 202 So. 3d 1121.  Article 12, Section 3 of the Louisiana Constitution mandates that "[n]o person shall be denied the right to ... examine public documents, except in cases established by law."

The Louisiana Public Records Law was enacted by the legislature to guarantee, in the most expansive and unrestricted way possible, the right of the public to inspect and reproduce those records which the laws deem to be public.  There was no intent on the part of the legislature to qualify, in any way, the right of access.  *Shane v. Parish of Jefferson*, 14-2225 (La. 12/8/15), 209 So. 3d 726.  The Public Records Law should be construed liberally in favor of free and unrestricted access to public documents.  *Zillow, Inc. v. Gardner, supra.*

Providing access to public records is a responsibility and duty of the appointive or elective office of a custodian and his employees. La. R.S. 44:31(A). Any person of the age of majority may inspect, copy, or reproduce any public record or obtain a copy or reproduction of any public record, except as specifically provided for by law. La. R.S. 44:31(B)(1) and (2). The burden of proving that a public record is not subject to inspection, copying, or reproduction rests with the custodian. La. R.S. 44:31(B)(3).

La. R.S. 44:32(A)(1) provides, in part:

> The custodian shall present any public record to any person of the age of majority who so requests. The custodian shall make no inquiry of any person who applies for a public record, except an inquiry as to the age and identification of the person.
> ….
>
> The custodian shall be permitted to make an inquiry regarding the specificity of the records sought by the applicant if, after review of the initial request, the custodian is unable to ascertain what records are being requested.

It shall be the duty of the custodian of the public records to provide copies to persons so requesting, unless the requestor fails to pay the applicable copying fees after being notified of the amount in advance of production. La. R.S. 44:32(C)(1)(a). The custodian may establish and collect reasonable fees for making copies of public records, which may include the transmission of electronic copies of public records. *Id.* The custodian may request payment of fees in advance of production. *Id.*

While the record generally must be made available immediately, the Public Records Act recognizes that some reasonable delay may be necessary to compile, review, and, when necessary, redact or withhold certain records that are not subject to production. *See* La. R.S. 44:33; *Stevens v. St. Tammany Parish Gov't*, 17-0959 (La. App. 1 Cir. 7/18/18), 264 So. 3d 456,

20

*writ denied*, 18-2062 (La. 2/18/19), 265 So. 3d 773. La. R.S. 44:35(A) provides:

> Any person who has been denied the right to inspect, copy, reproduce, or obtain a copy or reproduction of a record under the provisions of this Chapter, either by a determination of the custodian or by the passage of five days, exclusive of Saturdays, Sundays, and legal public holidays, from the date of his in-person, written, or electronic request without receiving a determination in writing by the custodian or an estimate of the time reasonably necessary for collection, segregation, redaction, examination, or review of a records request, may institute proceedings for the issuance of a writ of mandamus, injunctive or declaratory relief, together with attorney fees, costs and damages as provided for by this Section, in the district court for the parish in which the office of the custodian is located.

Evans' first argument, that Fortenberry never appeared at the Clerk's Office to inspect the records, fails to consider that Fortenberry was never notified that the requested records were available for inspection. Hunt's first email in response said that the records were being compiled and reviewed and that the records would be available for inspection on April 6, 2023. Hunt did not mention the total cost to reproduce the records. On April 13, 2023, Fortenberry emailed Hunt about the status of his request and again asked about the cost of reproduction. Hunt responded that the records were still being compiled.

On April 20, 2023, Fortenberry called Hunt, who responded that she did not know when the records would be ready and she would contact him when they were available. That was the end of the communication from the Clerk's Office to Fortenberry about his records request. As the trial court stated in its reasons for judgment, had Fortenberry arrived at the Clerk's Office to inspect the requested records, his trip would have been fruitless because the records were not there.

21

Next, Evans argues that Fortenberry received timely notice that the records he requested were being compiled, and it is only a custodian's "failure to respond" that triggers the right to bring a mandamus action. However, La. R.S. 44:35(A) says that a person who has been denied the right to inspect, copy, reproduce, or obtain a copy of a record, either by determination of the custodian or the passage of five days irrespective of weekends and legal holidays, from the date of his request, without receiving a determination in writing by the custodian or an estimate of the time reasonably necessary for collection, segregation, redaction, examination, or review of a records request may institute proceedings for the issuance of a writ of mandamus.

While Fortenberry was timely notified by Hunt of the time it would take the Clerk's Office to compile and review the records he requested, the original timeline provided was not reasonable given the nature of the records requested and the fact that they had to be compiled and reviewed by a CPA and further reviewed by an attorney. The Clerk's Office also failed to respond given that it never provided Fortenberry with the costs of reproduction or notified him that the records were available for inspection, even when Hunt had told Fortenberry that she would do so when the records were ready. Fortenberry was ultimately denied the right to inspect or receive a copy of the records he requested, and it was only after he instituted the mandamus proceedings that his request was honored. We agree with the trial court's assertion that the records likely would not have been produced without Fortenberry instituting his suit.

Evans' interpretation of the statute is illogical. A custodian cannot timely "respond" to a records request, providing only an estimate of when the records will be available for inspection, but never provide the records, and then argue that he did what was required by statute to avoid intervention by the court. The Public Records Act would have no teeth in such a case, where the Louisiana Constitution and this state's courts provide that the fundamental right of the public to inspect and reproduce public records should be interpreted in the most expansive and unrestricted way possible.

Evans next argues that the custodian of records may withhold production of the records until costs are paid. Again, Evans never informed Fortenberry of what the costs of production were, despite that he requested that information on at least two occasions. The trial court did not err in granting Fortenberry's petition. This assignment of error lacks merit.

*Civil Penalties, Attorney Fees, and Costs*

In his second assignment of error, appellant claims that the trial court erred by assessing civil penalties, attorney fees, and costs against the Clerk of Court. Evans contends that civil penalties are only allowed under La. R.S. 44:35(E) when the custodian of the public records unreasonably or arbitrarily failed to respond to the request as required by La. R.S. 44:32. Evans states that the Clerk's Office responded to Fortenberry's request by email on March 13, 2023, showing that timely notice was sent to him informing him of the estimated time it would take to gather the requested information. Evans argues that such notice precludes an assessment of civil penalties.

23

Fortenberry argues that a custodian's concerns about maintaining an elected position do not justify depriving or interfering with the public's constitutional right to examine public records. Fortenberry points out that Evans testified that his position as Clerk of Court was an elected position and that he was seeking reelection in the upcoming election on October 14, 2023.

Fortenberry directs this court's attention to Evans' answer in which he asserted that Fortenberry was not the person behind the records request, but that the case was "merely a subterfuge for an unidentified person who seeks production of the records for political or other purposes." Appellee contends that Evans' argument and the testimony elicited at trial shows Evans' motivation in failing to timely produce the records.

Fortenberry points out that La. R.S. 44:32(A)(1) provides that the custodian shall make no inquiry of the requestor except an inquiry as to their age and identification. Fortenberry claims that Evans went well beyond that inquiry when he sought subpoenas for Fortenberry, Wilfong, and Atty. Lobrano. Fortenberry argues that such action on the part of the clerk was arbitrary and capricious such that civil penalties were warranted. Appellee also argues that the records provided were partially redacted without the required written notice given to Fortenberry. Fortenberry asks that the trial court's ruling be affirmed.

La. R.S. 44:35(E)(1) states:

> If the court finds that the custodian arbitrarily or capriciously withheld the requested record or unreasonably or arbitrarily failed to respond to the request as required by R.S. 44:32, it may award the requestor any actual damages proven by him to have resulted from the actions of the custodian except as hereinafter provided. In addition, if the court finds that the

24

custodian unreasonably or arbitrarily failed to respond to the request as required by R.S. 44:32 it may award the requestor civil penalties not to exceed one hundred dollars per day, exclusive of Saturdays, Sundays, and legal public holidays for each such day of such failure to give notification.

Whether civil penalties or damages may be awarded under La. R.S. 44:35(E)(1) is based on whether the custodian arbitrarily or capriciously withheld the requested records or arbitrarily or unreasonably failed to respond to the request as required by La. R.S. 44:32. The terms "arbitrarily and capriciously" mean willful and unreasoning action, absent consideration and in disregard of the facts and circumstances of the case. However, when there is room for two opinions, an action is not arbitrary or capricious when exercised honestly and upon due consideration, even though it may be believed an erroneous conclusion has been reached. *Toups v. City of Shreveport,* 10-1559 (La. 3/15/11), 60 So. 3d 1215; *Carter v. City of Shreveport*, 51,589 (La. App. 2 Cir. 9/27/17), 244 So. 3d 659. An action is arbitrary and capricious if it is without rational basis. *Id*.

In *Carter v. City of Shreveport, supra*, this court found that the City did not act arbitrarily and capriciously when responding to Carter's "onerous and burdensome" records requests. *Id.* at 667. On September 14, 2015, Carter sought extensive information regarding the City's police department. The City responded the next day and advised the requestor that the City was working on the responses, which this court said was a "clear indication that the City was not intentionally trying to ignore Carter or avoid responding." *Id*. This court also referenced the "primitive state of record keeping" by the police department, stating that many of the personnel records sought had to be compiled and sorted by hand. *Id*.

25

On October 6, 2015, Carter agreed to give the defendants additional time to respond to the requests. *Id.* But, in that same correspondence, Carter made additional records requests. The City timely responded to the subsequent requests, but notified Carter of the need for additional time to respond, requesting a deadline of October 13, 2015. *Id.* at 665. On October 12, 2015, the City informed Carter that it needed more time to respond, but Carter did not agree to an extension and filed a petition for a writ of mandamus. *Id.*

At a hearing, the City presented evidence regarding the problems associated with responding to the requests and redacting certain information from such a voluminous response. *Id.* at 665-66. The parties agreed to a timeline for producing the records. *Id.* at 666. The trial court found that the defendants were not arbitrary and capricious in their delayed response and declined to award Carter any civil penalties. The trial court awarded Carter attorney fees. *Id.*

On appeal, this court found that the City was not intentionally attempting to evade Carter or avoid responding to his requests, but it showed a good faith effort by the City to maintain communication and adequately respond to Carter's requests. *Id* at 668. This court determined that the defendants fully complied with the provisions of La. R.S. 44:32, and that there was a factual basis for the trial court's conclusion that the defendants did not arbitrarily or capriciously withhold the requested records from Carter. *Id.*

The facts in *Carter v. City of Shreveport, supra*, can be contrasted with the instant case. First, in *Carter v. City of Shreveport*, the City was

26

dealing with records requests that required a by-hand search, review, and redaction of a very large number of documents. Here, Fortenberry's request resulted in 113 pages, and Evans did not argue that compiling the records was burdensome.

Second, in *Carter v. Shreveport, supra*, this court noted the City's attempts to timely communicate with Carter about the status of his records requests. The City contacted Carter before any proposed deadlines passed to inform him about the status of his records requests. In the instant case, the Clerk's Office did very little to update Fortenberry about the status of his records requests, and only did so after he contacted it. Evans initially responded timely to Fortenberry's records requests, made on March 6, 2023. Hunt responded by email five legal days later on March 13, 2023, stating that the records would be ready on April 6, 2023.

That date came and went without communication from the Clerk's Office to Fortenberry. He was required to email the Clerk's Office about the records. He did so on April 13, 2023, and was told they were still being compiled. By April 20, 2023, Fortenberry still had not heard from the Clerk's Office and he had to call Hunt. She again informed him that the records were not ready and he was not given a date when they would be ready, but Hunt promised that she would follow up with him. The Clerk's Office did not contact Fortenberry again.

It was only when Fortenberry filed a petition for a writ of mandamus that the Clerk's Office responded. However, Fortenberry's petition was delayed. He filed his petition on June 30, 2023, but the trial judge did not receive the petition until July 11, 2023, 11 days later. It was only then, on

27

July 14, 2023, that the Clerk's Office produced the records. However, Evans' response to Fortenberry's records requests was insufficient. He did not produce the complete records to Fortenberry: several months for each year of the requested information was missing.

Evans also issued burdensome and intrusive subpoenas to Fortenberry, Atty. Lobrano, and Wilfong, in an attempt to garner information well outside the scope of what a custodian of records may ask of a requestor. La. R.S. 44:32 clearly states that the custodian of the record shall make no inquiry of any person who applies for a public record, except an inquiry as to the age and identification of the requestor. Atty. Lobrano and Wilfong were not parties to the suit. Atty. Lobrano was a political rival of Evans' and Wilfong was a political consultant hired to manage the campaign of one of Evans' political rivals. The trial court was correct when it said that the subpoenas "were issued for no other reason than to harass and annoy the recipients."

The subpoena *duces tecum* directed to Fortenberry asked for banking information and payments made to particular persons or businesses, a violation of La. R.S. 44:32. Evans' answer to the petition attempted to make the case that Fortenberry was acting on behalf of Evans' political rival, instead of requesting the records for himself. Fortenberry's motivations were irrelevant. Evans went well beyond asking Fortenberry's name and age, and attempted to use the judicial process for his own political ends. Any further inquiry was prohibited under the Public Records Law.

Evans and the Clerk's Office acted arbitrarily and capriciously in failing to provide the records in a timely manner to Fortenberry. He was

required to file suit to get the records, incurring attorney fees. Evans further delayed turning the records over to Fortenberry by failing to give the trial court his petition until 11 days after it was filed. Evans issued harassing and irrelevant subpoenas to Fortenberry, Atty. Lobrano, and Wilfong, which they were required to challenge, incurring court costs. Evans' actions and what he stated in his answer make it clear that he was attempting to avoid turning over the requested records to Fortenberry in bad faith. When the records were produced, they were insufficient, even after they had been reviewed by a CPA and Evans' counsel.

The trial court's timeline for when the records should have been produced to Fortenberry is rational. After Evans received the records from the CPA on April 28, 2023, it should not have taken counsel for the Clerk's Office more than one week to review the 113 pages. The trial court was not manifestly erroneous in assessing civil penalties to Evans and assessing attorney fees and costs to Evans and the Office of the Clerk of Court *in solido*.

*Personal Liability*

Also in his second assignment of error, Evans argues that the trial court legally erred by assessing a civil penalty against him personally or as the Clerk of Court. He claims he was never made a party to the suit. He maintains that the suit was brought against him only in his capacity as the Clerk of Court. Appellant states the trial court was without authority to render a money judgment against him personally.

Fortenberry contends that La. R.S. 44:35(E)(2) explicitly provides that where the custodian arbitrarily or capriciously either withholds the records

or fails to respond to a request for the records, a court may award the requestor actual damages and the custodian shall be held personally liable *in solido* with the public body for such damages.

La. R.S. 44:35(E)(2) provides:

> The custodian shall be personally liable for the payment of damages pursuant to Paragraph (1) of this Subsection and shall be liable *in solido* with the public body for the payment of the requestor's attorney fees and other costs of litigation.

Evans' assertion that the trial court was without authority to assess him with civil penalties or require that he pay attorney fees and court costs is in contravention of La. R.S. 44:35(E)(2). Use of the word "shall" makes it imperative that the trial court assess the custodian with personal liability for any damages and civil penalties and assess the custodian liability *in solido* with the public body for the payment of any attorney fees and costs. Furthermore, Fortenberry's petition states that he was "entitled to damages, attorney fees, and costs against defendant, Jeremy Evans, personally and against the DeSoto Parish Clerk of Court's office, *in solido*, pursuant to [La.] R.S. 44:35." The trial court was not in error and this assignment of error lacks merit. The trial court's judgment is affirmed.

*Appellate Attorney Fees*

Fortenberry's attorney requested in his appeal brief additional attorney fees for the work necessitated by this appeal. However, an appellee who neither answers an appeal nor appeals from the trial court's judgment is not entitled to additional attorney fees for legal services rendered on appeal. La. C.C.P art. 2133. Although a request for additional attorney fees is made in his appeal brief, Fortenberry did not correctly request them by answering

30

this appeal. Thus, we will not increase his award for attorney fees incurred in the process of the appeal.

## CONCLUSION

For the foregoing reasons, the trial court's judgment is affirmed. Court costs in the amount of $980 are assessed to Jeremy Evans and the Office of Clerk of Court for DeSoto Parish, *in solido*.

**AFFIRMED.**